## Alexandria

## MIKE PHOUNG

v.

## COMMONWEALTH OF VIRGINIA

No. 1480-91-4

Decided December 15, 1992

458

COUNSEL

Leonard R. Piotrowski, for appellant.

John H. McLees, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—In a jury trial, Mike Phoung (Phoung) was found guilty of statutory burglary, two counts of abduction, two counts of robbery, and two counts of using a firearm while committing a robbery. On appeal, he contends that: (1) the evidence was insufficient to support the conviction for statutory burglary; (2) the convictions for abduction and robbery violate the double jeopardy prohibition against multiple punishments for the same offense; (3) Code § 19.2-294 bars the convictions for abduction, robbery and use of a firearm in the robberies of the two victims; and (4) the conviction for statutory burglary

should be reversed because the trial court erroneously instructed the jury regarding the element of intent. For the reasons that follow, we affirm.

## I.

On the morning of March 19, 1990, Nguyet O'Rourke (Nguyet) was in the kitchen of her home and her twenty-six-year-old daughter, Chi O'Rourke (Chi), was sleeping in her bedroom upstairs. At 8:00 a.m. that morning, Nguyet pushed open the sliding glass door in her kitchen to let her dogs out. Approximately thirty minutes later, she heard a noise behind her in the kitchen. She turned and saw four men coming in her house through the sliding glass door, which she had left open. The first man who came through the door held a gun to her head, tied her up, and told her to be quiet. He assured her that he did not mean to hurt her but just wanted her money and jewelry. At trial, Nguyet identified this man as Phoung.

Two of the men ran directly upstairs. Phoung and another man pulled Nguyet to the staircase and carried her up the stairs to her bedroom. They put her down on her bed and tied her more securely. They asked Nguyet where she kept cash and jewelry. They took from her home jewelry, a camera, a gun, $10,000 in coins, and over $100,000 in cash. On several occasions, the men tried to remove a piece of jewelry from her hand. One of the intruders told Nguyet that he wanted to rape Chi. When Nguyet begged them not to hurt her daughter, one of the intruders jumped up on the bed, kicked her and threatened to shoot her. Because Nguyet continued to look at this man, he instructed another intruder to cover her head with a blanket.

Chi was awakened that morning when she heard loud footsteps. A man entered her room and held a gun to her head as she lay on her stomach on her bed. The man told her to "shut up or I'll blow your head off." Another intruder tied her hands together behind her back and pulled a blanket over her so she could not see. When Chi started struggling, the men cut a telephone cord and tied her hands together to her legs. They asked Chi where she kept the jewelry and money, took her watch and bracelet off her wrist, and took $200 and the contents of a jar of quarters. One of the men repeatedly stated his intention of raping Chi and fondled her with his hand.

The intruders were in the house for more than thirty minutes. After they left, Chi freed herself and her mother and they called the police from a neighbor's house.

One of the intruders, Xuan Ho, testified for the Commonwealth. He stated that he and the other three robbers, including Phoung, had driven to Northern Virginia from Chicago for the express purpose of "robbing" the O'Rourke house. The house had been targeted because Nguyet "has money."

## II.

Phoung challenges his conviction for statutory burglary, alleging that the evidence was insufficient to prove a breaking.

"Breaking, as an element of the crime of burglary, may be either actual or constructive . . . . Actual breaking involves the application of some force, slight though it may be, whereby the entrance is effected. Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute this element of the crime."

*Bright v. Commonwealth*, 4 Va. App. 248, 252, 356 S.E.2d 443, 445 (1987) (quoting *Johnson v. Commonwealth*, 221 Va. 872, 876, 275 S.E.2d 592, 594-95 (1981)). Phoung contends that the evidence was insufficient to prove a breaking because the force applied to the sliding glass door, which was already "slightly opened," was not necessary to effect the entry. In support of his contention, Phoung relies upon Ho's testimony on cross-examination that the door "was open enough . . . to get in."

■ "When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom." *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). "The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it." *Id.*

Reviewing the evidence under these familiar principles, we find sufficient evidence to prove the element of a breaking. Nguyet testified that she had left the sliding glass door open a "very little" to let her dogs out. On direct examination, Ho testified that "the door was slightly opened already, so we just . . . pulled it open big enough so we

could go in.'' The fact that Ho's testimony on cross-examination contradicted his earlier testimony on direct is of no consequence because we are bound by the testimony that is more favorable to the Commonwealth. *See Eaton v. Commonwealth*, 240 Va. 236, 249-50, 397 S.E.2d 385, 393 (1990), *cert. denied*, 112 S. Ct. 88 (1991). The evidence, when viewed in the light most favorable to the Commonwealth, established that the intruders enlarged the opening of the partially open door in order to get inside the house. Therefore, the evidence was sufficient to permit the jury to find that a breaking had occurred. *See Johnson*, 221 Va. at 875-76, 275 S.E.2d at 594-95 (finding sufficient evidence of an actual breaking where the door was open one foot so that defendant had to push it open further to get inside).

### III.

Phoung next contends that his convictions for the abduction and robbery of Chi and Nguyet violate the double jeopardy prohibition against multiple punishments for the same offense.[1] Specifically, he alleges that the detention of the victims merely assisted in the completion of the robbery and was not separate and distinct from the restraint inherent in the act of robbery. Thus, he claims that he cannot be punished for both offenses.

In *Brown v. Commonwealth*, the Supreme Court recognized that ''in the enactment of the abduction statute the General Assembly did not intend to make the kind of restraint which is an intrinsic element of . . . robbery . . . a criminal act, punishable as a separate offense.'' 230 Va. 310, 314, 337 S.E.2d 711, 713 (1985).

> [O]ne accused of abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct, is subject upon conviction to separate penalties for separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime.

---

[1] The double jeopardy clause provides three distinct protections. '' 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' '' *Brown v. Commonwealth*, 230 Va. 310, 312-13, 337 S.E.2d 711, 713 (1985) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). Because Phoung's convictions were obtained in a single proceeding, we are concerned only with the third protection.

*Id.* at 314, 337 S.E.2d at 713-14. We must determine whether the detention of the victims was separate and apart from, and not merely incidental to, the restraint inherent in the act of robbery.

The evidence establishes that the detention of the victims was separate and distinct from the restraint inherent in the act of robbery. Nguyet was tied up in the kitchen so that she could not walk, was dragged to the staircase, carried up the stairs and placed on her bed where she was bound more securely. Once in the bedroom, the intruders took jewelry, money and other property. The robbery was remote in time and distance from the initial abduction. *See Brown,* 230 Va. at 314, 337 S.E.2d at 714. Similarly, the intruders detained Chi on her bed, face down, tied her hands and feet with a rope, later tied her hands and feet together with a telephone cord and covered her with a blanket from the waist up so she could not see. Although there was no remoteness between the time and place of the detention and the robbery of Chi, the "detention was greater than 'the kind of restraint that is inherent in the act of . . .' robbery." *Hoke v. Commonwealth,* 237 Va. 303, 311, 377 S.E.2d 595, 600 (quoting Brown, 230 Va. at 314, 337 S.E.2d at 714), *cert. denied,* 491 U.S. 910 (1989). Simply stated, the asportation of a victim from one room to another and the binding of another victim's hands and feet together are not acts inherent in the crime of robbery. *See Jones v. Commonwealth,* 13 Va. App. 566, 572, 414 S.E.2d 193, 196 (1992) (robbery involves the taking, with the intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation). Therefore, we find that the constitutional guarantee precluding multiple punishments for the same offense has not been abridged.

## IV.

■ Phoung also contends that his multiple convictions in the same trial for abduction, robbery and use of a firearm in the commission of a robbery arose out of the "same act" and are, therefore, barred by Code § 19.2-294. That statute provides, in pertinent part: "If the same act be a violation of two or more statutes, . . . conviction under one of such statutes . . . shall be a bar to a prosecution or proceeding under the other or others." However, Code § 19.2-294 does not bar multiple convictions for separate crimes arising out of the same act when those convictions are obtained in a single trial. *Hall v. Commonwealth,* 14 Va. App. 892, 894, 421 S.E.2d 455, 457 (1992) (en banc). Thus, even if the challenged convictions arose out of the "same act," Code § 19.2-294 would not impose a bar if the convictions were obtained in

a single proceeding. Because Phoung's convictions were obtained in a single trial, his contention that Code § 19.2-294 precludes his convictions for abduction, robbery and use of a firearm in the commission of a felony is without merit.

## V.

Finally, Phoung contends that his conviction for burglary should be reversed because the trial court improperly instructed the jury regarding the elements of the offense. The essence of Phoung's contention is that the instruction erroneously described the intent with which the breaking and entering was committed. Phoung was indicted for breaking and entering the dwelling, while armed, with the intent to commit robbery; however, the jury was instructed that it was required to find that the armed breaking and entering was accomplished with the intent to commit larceny.[2]

Although Phoung did not object to the instruction at trial, he argues on appeal that the erroneous instruction misled the jury, lowered the standard of proof required for conviction, and permitted him to be convicted of an offense for which he was not indicted. The Commonwealth, conceding that the instruction was erroneous, claims that Phoung is procedurally barred from raising this issue on appeal because he failed to raise it before the trial court. Rule 5A:18. In response, Phoung contends that we should consider this issue in order to attain the ends of justice. Thus, we must decide whether the "ends of justice" require us to overlook Phoung's failure to raise this issue before the trial court.

 "Under Rule 5A:18 we do not notice the trial errors for which no timely objection was made except in extraordinary situations when necessary to enable us to attain the ends of justice." *Brown v. Commonwealth*, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989).[3]

---

[2] Count I of the indictment alleged that Phoung "did break and enter the dwelling house of Nguyet O'Rourke . . . while armed with a deadly weapon, with the intent to commit robbery." However, the trial court instructed the jury that the Commonwealth was required to prove beyond a reasonable doubt that Phoung "broke and entered the dwelling house . . . with the intent to commit larceny . . . while armed with a deadly weapon." The instruction further directed the jury, if they found the elements beyond a reasonable doubt, to find Phoung guilty of "burglary while armed." The jury returned a verdict finding Phoung "guilty of burglary as charged in Count I of the indictment."

[3] The purpose of the contemporaneous objection rule is " 'to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule intelligently, and to avoid unnecessary reversals and mistrials.' " *Jimenez v.*

464

"[T]he 'ends of justice' provision may be used when the record affirmatively shows that a miscarriage of justice has occurred." *Mounce v. Commonwealth*, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987).

> Whether we apply the bar of Rule 5A:18 or invoke the ends of justice exception, we must evaluate the nature and effect of the error to determine whether a clear miscarriage of justice occurred. We must determine whether the error clearly had an effect upon the outcome of the case. The error must involve substantial rights.

*Brown*, 8 Va. App. at 131, 380 S.E.2d at 10. We have held that a clear miscarriage of justice has occurred when the error is "clear, substantial and material." *Id.* at 132, 380 S.E.2d at 11.

■ The Virginia Supreme Court and the Court of Appeals have invoked the "ends of justice" exception in cases where elements of the offense have been omitted from jury instructions at trial without objection from counsel. *See Jimenez*, 241 Va. at 251, 402 S.E.2d at 681; *Campbell v. Commonwealth*, 14 Va. App. 988, 421 S.E.2d 652 (1992) (en banc).

> "[W]hen a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." That duty arises even when "trial counsel neglected to object to the instruction." Obviously, the proper description of the elements of the offenses is vital to a defendant. Attaining the "ends of justice" requires correction of an instruction which allows a jury to convict a defendant without proof of an element of a crime.

*Campbell*, 14 Va. App. at 991-92, 421 S.E.2d at 654 (citations omitted). However, the record in this case does not support the application of the "ends of justice" exception to Rule 5A:18. A review of *Jimenez* and *Campbell* will illustrate how this case differs from those "extraordinary instances" where we have found it necessary to overlook a defendant's failure to object to a defective jury instruction.

---

*Commonwealth*, 241 Va. 244, 248-49, 402 S.E.2d 678, 680 (1991) (interpreting Rule 5:25, the Supreme Court's counterpart to 5A:18) (quoting *Fisher v. Commonwealth*, 236 Va. 403, 414, 374 S.E.2d 46, 52 (1988), *cert. denied*, 490 U.S. 1028 (1989)).

In *Jimenez*, defense counsel failed to object to a jury instruction that omitted one of the elements of an offense. As a result, the instruction did not state any offense at all. Moreover, no evidence was produced at trial relating to the missing element. Finding that Jimenez was convicted of "a non-offense" and that no evidence was produced regarding the missing element, the Virginia Supreme Court held that the error was not waived by Jimenez's failure to raise it below. 241 Va. at 251, 402 S.E.2d at 681. Here, however, the burglary instruction defined the elements of an actual offense and the evidence adduced at trial overwhelmingly showed Phoung guilty of breaking and entering with the intent to commit both robbery and larceny.

This case is also distinguishable from our recent decision in *Campbell* where we invoked the "ends of justice" exception in order to review an error assigned to an improper jury instruction even though the error had not been brought to the attention of the trial court. There, in a trial for forgery of a public document, the jury instruction essentially eliminated intent to defraud as an element of the offense. We held that a manifest injustice had occurred because the "instructions given by the trial court relieved the Commonwealth of its burden to prove criminal intent," 14 Va. App. at 992, 421 S.E.2d at 655, and permitted the jury to convict Campbell "for otherwise innocent behavior." *Id.* at 995, 421 S.E.2d at 656. Unlike Campbell, however, Phoung was not convicted "for otherwise innocent behavior." *Id.* The burglary instruction correctly stated the elements of the offense of breaking and entering with the intent to commit larceny, and the evidence produced at trial supported a conviction for either the offense charged in the indictment or the offense charged in the instruction.

█ In the present case, the error in the jury instruction was that the instruction omitted the requirement of violence or intimidation as an element of the offense charged in the indictment. It essentially permitted a conviction on a finding that Phoung broke and entered the dwelling with only the intent to commit larceny rather than robbery. This error was "clear." The Commonwealth concedes, as it must, that the instruction was contrary to the statutory law of breaking and entering with the intent to commit robbery. Because the erroneous instruction related to the elements of the crime charged, the error also was "substantial." Thus, the critical determination in our ends of justice analysis is whether the error also was "material." An error that is not important enough to affect the outcome of the trial is not "material" but,

rather is harmless error. *See Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc).

Phoung did not dispute that four men committed robberies of Nguyet and Chi. He simply maintained that he was not one of the four robbers. The erroneous instruction did not relate to the jury's finding that Phoung committed these robberies.

The erroneous instruction related only to the issue of whether the burglary was committed with the intent to commit violence or intimidation, a fact which Phoung did not contest. No evidence was presented to suggest or support a finding that Phoung entered the dwelling with an intent other than to commit robbery. Moreover, the jury's determination that Phoung robbed Nguyet necessarily confirms the jury's acceptance of the evidence that established that Phoung was the first of the four intruders to enter the dwelling and *at that time* he was armed with the firearm he then held "to [Nguyet's] head." The evidence that Phoung was armed with a firearm at the time he broke and entered the victims' dwelling, coupled with the evidence that the intruders had gone to that dwelling for the express purpose of robbing one of the victims there, supports the jury's finding that Phoung was guilty of "burglary as charged in Count I of the indictment," which charged burglary while armed with the intent to commit robbery. Nguyet testified that Phoung held a firearm to her head while he assured her that he did not mean to hurt her but just wanted her money and jewelry. This evidence established, without dispute, the element of violence or intimidation required by the indictment but missing from the jury instruction. From this evidence, the jury determined that Phoung broke and entered with the requisite intent to rob rather than merely with the intent to commit larceny. In this context, it is clear that the error in the jury instruction was not material because it did not affect the outcome of the trial. While error, it was harmless. In short, Phoung was convicted upon uncontradicted evidence for the crime for which he was indicted. The outcome would have been the same had the instruction been correct.

For these reasons, we find that the failure to instruct the jury properly was harmless error and did not result in a miscarriage of justice. Therefore, the contemporaneous objection rule, Rule 5A:18, controls.

*Affirmed.*

Barrow, J., and Willis, J., concurred.