COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Lemons and Senior Judge Cole
Argued at Richmond, Virginia


ENDDY OMAR CATEDRAL

v.          Record No. 2441-97-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE DONALD W. LEMONS
FEBRUARY 9, 1999


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
John F. Daffron, Jr., Judge

David B. Hargett (Joseph D. Morrissey;
Morrissey, Hershner & Jacobs, on brief), for
appellant.

Ruth Morken McKeaney, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Enddy Omar Catedral was convicted of robbery, use of a

firearm in the commission of a robbery, five counts of abduction,

and three counts of use of a firearm in the commission of

abduction.  On appeal, Catedral argues that the trial court erred

in refusing to give his proposed jury instruction on abduction

and in denying his motion to voir dire a juror following the

verdict.  Because we hold that the trial court committed no

error, we affirm.

BACKGROUND

On April 16, 1996, at approximately 10:30 p.m., Edward Lee

Parker, Jr., an employee of Arby's restaurant in the County of

Chesterfield, was emptying trash behind the building.  Parker

        [*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

heard footsteps behind him and felt a gun being placed in the middle of his back. He heard a voice, identified as Enddy Omar Catedral, appellant, ask "How many people are inside?" Parker stated that Catedral then placed the gun at the back of his head. Parker replied that there were three employees and a manager. Catedral told him to turn around, and Parker saw a second person, identified as Michael Sandy, carrying a shotgun. Both men were dressed in dark clothing with their faces covered.

Catedral held the gun to Parker's head as Parker opened the door, and the men walked into the back of the restaurant behind him. Once inside, Catedral went to the manager's office and pointed the gun at the manager, Phil Gammon. Gammon stated that he was "counting the money for the night" when he saw Parker enter the building with a person holding a pistol to Parker's head. Gammon walked to the door of his office, and Catedral pointed the pistol at Gammon's head, told him to look at the floor, and to sit back at the desk. Catedral tossed a black bag onto a table in the office and told Gammon to put the money into it.

Sandy walked around the restaurant confronting the other employees. Sandy stopped Monica Moore in the front of the store and Vanessa Mavilla while she was working on the back line slicer. Sandy approached Melissa Watson as she cleaned the floor. Sandy gathered Moore, Mavilla, Watson, and Parker outside of Gammon's office. Catedral and Sandy ordered the four

employees into a walk-in refrigerator at gunpoint. A few moments later, when Gammon was finished putting the money in the bag, Catedral emptied the safe and took money from inside the desk. Catedral then ordered Gammon into the walk-in refrigerator. As he walked in, Catedral remarked to Sandy "make sure he doesn't get out." The door, while not locked, was closed behind the employees and the manager. The employees and Gammon waited in the back room of the refrigerator for about five minutes before exiting into an empty store.

On July 15, 1996, Catedral was indicted on five counts of abduction, one count of robbery, one count of using a firearm in the commission of a robbery and five counts of use of a firearm in the commission of abduction. On October 31, 1996, he was convicted in a jury trial of all charges, except two counts of using of a firearm in the commission of abduction. Catedral appeals, arguing that the trial court erred in refusing his proffered jury instruction on abduction and in failing to voir dire a juror following the verdict.

JURY INSTRUCTION

Upon review of jury instructions given or refused at trial, an appellate court is charged with seeing that "the law has been clearly stated and the instructions cover all issues which the evidence fairly raises." Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (citations omitted). The evidence relied upon to support a proffered instruction must

amount to "more than a scintilla." Morse v. Commonwealth, 17 Va. App. 627, 633, 440 S.E.2d 145, 149 (1994) (citations omitted). "An instruction that is not supported by the evidence, however, is properly refused." Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479-80 (1993) (citations omitted).

A proper jury instruction is one which "informs the jury as to the essential elements of the offense." Darnell, 6 Va. App. at 488-89, 370 S.E.2d at 719 (citations omitted). Where more than one jury instruction correctly defines the law, the trial court is not in error for refusing multiple jury instructions that touch upon the same legal principle. See Cirios v. Commonwealth, 7 Va. App. 292, 303-04, 373 S.E.2d 164, 170 (1988) (citing Tuggle v. Commonwealth, 228 Va. 493, 508, 323 S.E.2d 539, 548 (1984), vacated on other grounds, 471 U.S. 1096 (1985)). An appellate court must review a trial court's refusal to give an instruction "in the light most favorable" to the defendant. Brandau v. Commonwealth, 16 Va. App. 408, 412, 430 S.E.2d 563, 565 (1993).

On appeal, Catedral states that the acts of abduction were extremely close in time and distance to the robbery. He also contends that the "force and intimidation employed in the abduction were not separate and apart from the restraint inherent in the commission of the robbery." Therefore, Catedral argues that the jury could have reasonably found that he was not guilty of any acts of abduction which were not inherent in the

-4-

commission of the robbery. Catedral contends that when there is a robbery of numerous persons in a large space, it is necessary to gather the persons present into one area where they can easily be watched.

> Catedral requested that the jury be instructed:
> One accused of abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct, is subject upon conviction to separate penalties for separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime.

The trial court instead offered the following instruction for each abduction charge:
> The defendant is charged with the crime of abduction. Abduction and kidnapping are the same crime. The Commonwealth must prove beyond a reasonable doubt each of the following elements of the crime: Number 1, that the defendant by force or intimidation did seize or detain [the five persons allegedly placed inside the walk-in refrigerator]. And Number 2, that the defendant did so with the intent to deprive [the five persons placed inside the walk-in refrigerator] of [his or her] personal liberty. And Number 3, that the defendant acted without legal justification or excuse.

The sole issue on appeal with respect to the jury instruction is whether more than a "mere scintilla" of evidence existed to support a jury finding that the act of placing the employees in the walk-in refrigerator was incidental to the robbery of Arby's restaurant, and not separate and apart from the

restraint necessary to commit the robbery.

"[T]o constitute [an] abduction, separate and apart from a robbery, the victim's detention must be greater than the restraint that is intrinsic in a robbery." Cardwell v. Commonwealth, 248 Va. 501, 511, 450 S.E.2d 146, 152 (1994). Even if the purpose of the abduction is in furtherance of the robbery in allowing the defendant to make an effective escape, an act of abduction is not considered inherent in the crime of robbery. See Phoung v. Commonwealth, 15 Va. App. 457, 462, 424 S.E.2d 712, 715 (1992).

In Brown v. Commonwealth, 230 Va. 310, 337 S.E.2d 711 (1985), the defendant appealed his conviction of abduction with intent to defile following his convictions for rape and forcible sodomy, arguing that any detention of the victim arose out of the restraint necessary to commit the other crimes. He argued that he could not be punished for both rape and abduction with intent to defile because "such conduct constitutes the same offense . . . ." Id. at 313, 337 S.E.2d at 713. The

> Supreme Court of Virginia affirmed his
> conviction for abduction, holding, one
> accused of abduction . . . and another crime
> involving restraint of the victim, both
> growing out of a continuing course of
> conduct, is subject upon conviction to
> separate penalties for separate offenses only

-6-

> when the detention committed in the act of
> abduction is separate and apart from, and not
> merely incidental to, the restraint employed
> in the commission of the other crime.

Id. at 314, 337 S.E.2d at 713-14.

In Brown, the defendant approached a woman in a parking lot and asked for a ride. She refused, and entered her car. The defendant opened her car door, hit her on the head, and pushed her into the passenger seat as he entered the car. The defendant threatened that he would "cut" her if she attempted to get out of the car, and he drove to a remote area where he raped her and commited acts of sodomy. See id. at 312, 337 S.E.2d at 712. The defendant argued that the act of driving her to the remote area was inherent in the commission of the rape and sodomy and that it was not punishable as a separate offense. The Court disagreed and held,

> [t]he evidence in the record before us shows
> that the detention underlying the abduction
> conviction was not the kind of restraint that
> is inherent in the act of rape. Abduction
> was established as a fact once the
> Commonwealth proved that Brown had deprived
> his victim of her liberty by physical
> assaults and threats of violence.

Id. at 314, 337 S.E.2d at 713.

In Phoung, 15 Va. App. 457, 424 S.E.2d 712, the defendant was convicted of statutory burglary, two counts of abduction, two counts of robbery, and two counts of using a firearm while

committing robbery. He appealed, arguing in part that his convictions for abduction and robbery violated the double jeopardy prohibition against multiple punishments for the same offense.

In Phoung, the defendant and three codefendants entered the victim's house, held a gun to her head, tied her up and told her to remain silent. Two of the men went upstairs and bound her daughter to her bed. While the victims were tied up, the men stole various items of personal property. On appeal, Phoung argued that "the detention of the victims merely assisted in the completion of the robbery and was not separate and apart from the restraint inherent in the act of robbery" and that he may not be punished for both offenses. Id. at 461, 424 S.E.2d at 714.

We affirmed the defendant's two convictions for abduction, holding that "[t]he evidence established that the detention of the victims was separate and distinct from the restraint inherent in the act of robbery." Id. at 462, 424 S.E.2d at 715. In looking at the elements of each offense, we reasoned, "[s]imply stated, the asportation of a victim from one room to another and the binding of another victim's hands and feet together are not acts inherent in the crime of robbery." Id.

In the case now before us, Catedral argues that the act of placing five employees in a walk-in refrigerator was inherent in the commission of the robbery. We disagree. Each act of placing the five people in a walk-in refrigerator was not inherent in the

commission of the robbery.

> In refusing Catedral's instruction, the trial judge stated,
>> Well, I think if it is subject to interpretation and turns on a factual determination, then it does become an issue for the jury, but in this case, the only evidence, at least at this point, is that the employees were directed against their will into another area where they were confined. That on the face of it is abduction. . . .
>>
>> But I think when they're transported to another area or they are seized, then I don't think that under the testimony that it's a factual issue and I think that's the threshold determination; could the jury under the evidence that they have heard determine that this was part of the same offense. . . . They were taken to another area and locked in there. I think that's seizure and abduction.
>>                *    *    *    *    *    *    *
>> [T]hey were taken against their will, intimidation and a show of force, namely weapons, and said, go into that area. I think that is a sufficient factual basis for the court to rule, and I make that ruling as a matter of law that it's not susceptible to interpretation by the jury, the fact finders . . . .

The court's instruction on abduction clearly stated the law related to that offense. Because we agree with the trial court that the act of placing the employees into the walk-in refrigerator was not incidental to the robbery and that not even a scintilla of evidence tended to prove otherwise, we hold that it was not error for the court to refuse Catedral's instruction.

POLLING OF THE JUROR

Following the jury verdict, Catedral requested that the jury be polled. During the court's poll of the jury, one of the

jurors[1] expressed that she "had doubts" with the other jurors'

decision.  The following colloquoy took place:

> THE COURT:  Well, what you need to tell me is if you've reached a decision in the verdict that you found the defendant guilty beyond a reasonable doubt in each of the ten verdicts that I read that were guilty verdicts.
>
> JUROR:  Each of the ten?
>
> THE COURT:  Yes.  You've returned 12 verdicts.  On ten of them, the defendant was found guilty.  On two [use of a firearm] charges, the verdict was not guilty . . . .  So the question that I ask you, . . . are these ten guilty verdicts, is this among others your decision on each of the ten?
>
> JUROR:  Except for one.
>
> THE COURT:  So these are not all unanimous verdicts?  Well, that's an awkward matter, but I need to know whether or not the verdicts were unanimous.  Now, what you're telling me is they were not all unanimous.  You didn't vote for a finding of guilt in each of the ten guilty verdicts?
>
> JUROR:  I voted in the end.  Yes.
>
> THE COURT:  All right.  Well, was your decision, your thought process, that you found under the evidence that the Commonwealth had proved to you the guilt of the accused in these ten cases?
>
> JUROR:  I just have reservation on one part, but I went along.  I said yes.
>
> THE COURT:  I read you an instruction.
>
> JUROR:  Yes, I know.

---

[1]The court finds it unnecessary to identify this juror by name, as the identity of the juror is readily available to both parties and their attorneys through a review of the record.

THE COURT: The instruction said it's not guilt beyond all doubt. It's guilt beyond all reasonable doubt. Now, the question that I asked you is do you have a reasonable doubt as to the guilt of the accused in any of the ten convictions.

JUROR: I don't have any doubt.

THE COURT: Ma'am?

JUROR: I don't have any doubt.

THE COURT: So it is your statement now that individually, not that you went along with it, but that individually you had determined that the Commonwealth has proved to your reasonable satisfaction the guilt of the accused beyond a reasonable doubt?

JUROR: Yes.

After the other eleven jurors each stated that these were his or her verdicts, Catedral's counsel asked the court to voir dire the juror who had expressed concerns. Catedral's counsel requested that this additional questioning take place outside the presence of the other jurors. The court refused his request, but allowed counsel to tell the court what questions he would like to ask the juror. Catedral's counsel requested that the court ask whether the juror "felt pressured into giving a guilty verdict" and whether the juror felt pressured to give the answer in front of the other jurors. The court conducted the following additional colloquoy with the juror:

THE COURT: Frequently Courts will give instructions, advise all the jurors something like this, that if you can do so, it's your duty to reach a decision. Now, that's a practical response because if there is not a unanimous verdict, then one possibility is that the case will have to be retried, which

–11–

means we'll get 12 others to come in and sit on the jury. Now, we're not going to get a wiser, more thoughtful, more insightful jury than those of you sitting here now. So that's why I read what the law is and practically should be.

If you can reach a verdict, it's your duty to do so if you can do so without giving up any firmly held beliefs. You do not make a decision just to go along. You do not make a decision just because you were pressured. I'm sure it's awkward for you to make your comments that you have now, and you shouldn't be pressured in the jury room or in the courtroom. You should not give up your honest opinion as to the evidence solely because of the opinions of your fellow jurors or simply for the purpose of returning a verdict.

. . . [I]f there's a difference in opinion . . . then it's appropriate to re-examine your views . . . and if you choose to reconsider your decision, then that's your right to do so.

I emphasize foremost that you don't make a decision just to go along. But it's proper and appropriate to listen to the other jurors, consider their points of view, consider whether or not you need to make a different response.

Now, I've said a couple of times you should not be pressured in the jury room. You should not be pressured in the courtroom to make a decision. Now, I think I need to ask you for the court record just one more time if you agree with all the verdicts. . . . I'm neither trying to get you to go along nor trying to change your mind. I'm trying to ask you a question so it will be clear on the court what your decision is. And the question again is do you agree on each of the ten guilty verdicts that the evidence has proved to you beyond a reasonable doubt the guilt of the accused?

JUROR:   I agree.

　　　　THE COURT:　　You agree with that?

　　　　JUROR:　　Yes.

　　　"A trial court has discretionary authority to ask appropriate neutral questions to clarify matters of confusion in a juror's response to a poll." Carver v. Commonwealth, 17 Va. App. 7, 10, 434 S.E.2d 916, 918 (1993) (citations omitted). In Carver, defendant was convicted of grand larceny. Following his conviction, defendant's counsel asked to poll the jury. During the poll, one juror stated that his belief was contrary to the verdict rendered and "indicated a clear disregard of the court's preliminary instructions and an improper basis for her vote of guilty." Id. at 10, 434 S.E.2d at 918. We reversed the defendant's conviction and remanded for a new trial, holding that the juror's responses were not based upon confusion of the jury process, but rather, on the juror's stated belief that the defendant was innocent. See id. at 10, 434 S.E.2d at 918.

　　　In the case before us, the juror's responses in the initial poll and the court's subsequent communication with her did not indicate that she believed that Catedral was innocent. Here, the juror's responses revealed a full understanding of both the court's preliminary instructions and the standard of proof that the Commonwealth was required to meet. A review of this record reveals that the juror affirmed her verdicts eight times in response to the court's questions. The court did not err in refusing to allow Catedral's counsel to conduct an individual

–13–

voir dire outside the presence of the jury.

CONCLUSION

Based upon the foregoing, we hold that the trial court neither erred in refusing Catedral's proffered instruction on abduction, nor in refusing to allow Catedral's counsel to voir dire a juror outside the presence of the other jurors after the jury had returned its verdicts.  Therefore, we affirm his convictions.

Affirmed.