COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Causey and Callins

KALEB S. NICOL

MEMORANDUM OPINION[*]

v.     Record No. 1281-22-1

PER CURIAM

AUGUST 22, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Michael A. Gaten, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares, Attorney General; Angelique Rogers, Assistant
Attorney General, on brief), for appellee.


Following his guilty pleas under *North Carolina v. Alford*, 400 U.S. 25 (1970), the trial

court convicted Kaleb S. Nicol of voluntary manslaughter and shooting in the commission of a

felony. The trial court sentenced him to 15 years' incarceration with 5 years suspended. On appeal,

Nicol challenges the validity of his *Alford* pleas and argues that the trial court abused its discretion

in its imposition of sentence. After examining the briefs and record in this case, the panel

unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit."

Code § 17.1-403(ii)(a); Rule 5A:27(a).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

In October 2019, a grand jury indicted Nicol for second-degree murder, use of a firearm in the commission of a felony, three counts of maliciously shooting into an occupied dwelling, conspiracy to commit murder, and shooting in the commission of a felony. In exchange for Nicol's *Alford* pleas to an amended indictment of voluntary manslaughter and shooting in the commission of a felony,[2] the Commonwealth agreed to nolle prosequi the remaining indictments.

The trial court conducted a plea colloquy with Nicol including confirming that Nicol had discussed the charges and possible defenses with his attorney and that he fully understood the elements the Commonwealth was required to prove,[3] that he understood his right to plead not guilty and to be tried by a jury, and that, other than the charges the Commonwealth would nolle prosequi, no one had induced his pleas by threat or promise. Nicol also confirmed that he had sufficient time to discuss his case with counsel and did not require any additional time before entering his pleas. Nicol acknowledged that he was "entering these *Alford* pleas freely and voluntarily."

---

[1] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[2] The joint appendix does not contain the amended indictment for voluntary manslaughter. *See* Rule 5A:25(c)(1) (requiring that an appendix include "the basic initial pleading[s] (as finally amended)"). Because the details of the amended indictment are memorialized in a March 2022 conviction order included in the joint appendix, omission of the amended indictment does not preclude us from addressing the merits of the assignments of error. *See Jay v. Commonwealth*, 275 Va. 510, 520 (2008) (explaining that, in applying Rule 5A:20(e), the Court "should . . . consider whether any failure to strictly adhere to the [statutory] requirements . . . is insignificant, thus allowing the court to address the merits of a question presented").

[3] Nicol's counsel also averred that he had reviewed an *Alford* plea of guilty form with Nicol before the plea hearing.

Nicol's counsel proffered his version of events, to help bolster the record that he was entering "an *Alford* plea and not just a straight plea." Counsel repeatedly attacked the credibility of the Commonwealth's evidence and suggested that another individual—one of Nicol's friends—was the shooter. Significantly, Nicol's counsel represented that he had discussed with Nicol "all the pros and cons" and that he could not "give guarantees to anyone" because the Commonwealth "ha[d] a case" and Nicol's counsel did not "know what a jury would do."

After the proffers, the trial court resumed the plea colloquy with Nicol. Nicol confirmed that he was entering his *Alford* pleas "because of the evidence" the Commonwealth had proffered, and—although he disagreed with some of the evidence—he acknowledged his understanding that if a judge or jury "believed the Commonwealth's version," he could be convicted. Nicol also acknowledged that his counsel had advised him of the statutory minimum and maximum punishments for the offenses, and of the fact that the trial court was not required to follow the sentencing guidelines. Nicol confirmed that he was "entirely satisfied with the services" of his counsel and understood all of the trial court's questions; he declined the opportunity to ask questions of the court. The trial court found that Nicol's *Alford* pleas were made "knowingly, intelligently, and voluntarily." Based on the pleas and the proffered evidence, the trial court convicted Nicol of voluntary manslaughter and shooting in the commission of a felony.

In his sentencing memorandum, Nicol asked for a sentence "near" the low end of the adjusted guidelines range of "[n]o [i]ncarceration" based on his plea and "expression of [r]emorse."[4] Nicol allocated 20 pages of his memo to attacking the credibility of certain witnesses, including his friends present at the shooting. Nicol also signaled that he acted in self-defense, claiming that the

---

[4] The discretionary sentencing guidelines recommended a range of 2 years and 4 months at the low end, a midpoint of 4 years and 5 months, and a high end of 5 years and 11 months.

victim "and his friends were the aggressors." Finally, Nicol attached to the memorandum numerous letters of support.

At sentencing, the prosecutor acknowledged that the Commonwealth's witnesses would "have issues in front of a jury." Nevertheless, the Commonwealth contended that the statutory maximum sentence of 15 years' imprisonment was appropriate under all the circumstances of the case.

In response to Nicol's continued challenge to the credibility of the Commonwealth's evidence, the trial court noted to Nicol that his *Alford* pleas had the same legal effect as guilty pleas. The trial judge explained that if he doubted the credibility of the evidence, "the proper thing" to do would have been to "vacate the *Alford* plea[s]" rather than give Nicol "a really light sentence."[5] Nicol asked the trial court to keep its sentence in the "area" of probation.

During his allocution, Nicol read a letter he wrote to the trial court. He expressed his regret over the events of May 12, 2019, acknowledging that the shooting had "only caused pain and suffering to a lot of people." He stated that he empathized with the victim's mother's pain and that he "did not have any problems with anyone" associated with the confrontation that led to the victim's death. Being incarcerated had forced him to "wake up and realize many of the things [he] took for granted." He averred that he was not the person the Commonwealth "made [him] seem to be" and that he was committed to making the experience "a learning experience." He shared that he had read several self-help books while he was incarcerated.

In pronouncing sentence, the trial court emphasized that the issue was the "appropriate sentence for a killing" that was the consequence of "the heat of passion without malice

---

[5] After additional argument from Nicol challenging the witnesses' credibility, the trial judge reiterated that the court's role was to engage in a sentencing analysis for voluntary manslaughter because, although Nicol maintained his innocence, he had agreed that the evidence was sufficient to support a conviction.

aforethought." It would be unfair, the trial court noted, for Nicol to plead guilty to manslaughter and then "imply actual innocence" so "the sentence c[ould] go even lower." Likewise, it would be unfair for the Commonwealth to agree to an *Alford* plea to voluntary manslaughter and then "back-door" a murder on Nicol. The trial court further noted that it was not persuaded by "testimony about the weight of the evidence."

The trial court expressed its intent to "give value and dignity to the [victim's] life" but also "do justice for" Nicol. The trial court considered the character letters and other documents supporting Nicol. After considering all the evidence, the court found that although the sentencing guidelines "adequately consider[ed] the facts and circumstances" of the charges, they did not adequately reflect the victim's youth and "how much life [he] had left in front of him." The trial court deviated upward from the guidelines range and sentenced Nicol to ten years' incarceration for voluntary manslaughter, the maximum allowable sentence under Code § 18.2-10, and five years, all suspended, for shooting in the commission of a felony. Nicol now appeals.

ANALYSIS

I. *Alford* Pleas

Nicol contends that the trial court erred by accepting his *Alford* pleas because he did not enter them intelligently and voluntarily. He argues that "the record failed to establish" that he "was given notice of the elements of" the offenses or "what the Commonwealth must prove before [he] could be" convicted. He further contends that the trial court failed to inform him of the rights he was waiving by pleading guilty under *Alford*. Specifically, Nicol argues that the trial court did not ask whether Nicol, among other things, waived his right against self-incrimination and his right to confront his accusers. Nicol also argues that he was not "made aware of the various collateral consequences of his *Alford* pleas of guilty," including the loss of his rights to vote and to possess a firearm and disqualification of certain public benefits and occupational licenses. Relying on *Padilla*

*v. Kentucky*, 559 U.S. 356 (2010), Nicol suggests that the trial court's failure to advise him of those collateral consequences rendered his pleas invalid.

Additionally, Nicol contends that his trial counsel's challenges to the Commonwealth's proffer at the plea colloquy, in the sentencing memorandum, and at the sentencing hearing "were inconsistent with *Alford* pleas and appeared to be attempts to negate or disavow" those pleas. Nicol acknowledges that he did not move to withdraw his pleas or otherwise preserve his argument for appellate review but asks that we address his argument under the "good cause" and "ends of justice" exceptions to Rule 5A:18.

"Under Rule 5A:18, no trial court's ruling will be 'a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice.'" *Holman v. Commonwealth*, 77 Va. App. 283, 297 (2023). "Appellants generally waive their right to appeal if they do not specifically and timely state their objections." *Id.* "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Id.* at 298 (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)).

"On appeal, we may consider issues not raised below only if they fall into an exception to Rule 5A:18." *Id.* (citing *Merritt v. Commonwealth*, 69 Va. App. 452, 459-60 (2018)). "The first exception, good cause, may be invoked only when 'an appellant did not have the opportunity to object to a ruling in the trial court.'" *Id.* (quoting *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011)). "[H]owever, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." *Perry*, 58 Va. App. at 667 (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)).

The trial court accepted Nicol's *Alford* pleas on March 28, 2022, and entered final judgment on July 28, 2022. Thus, Nicol had four months to withdraw his *Alford* pleas before entry of a final judgment, but he did not do so. Nothing in the record suggests that Nicol was prevented from filing a motion to withdraw, and he did not do so even after the trial court, at the sentencing hearing, referenced the possibility of vacating the *Alford* pleas. Nicol consistently maintained his innocence yet pleaded guilty under *Alford* apparently to stave off the risk of a lengthy sentence.[6] Accordingly, the good cause exception does not apply. Nicol had ample opportunity to alert the trial court to the relief he sought, and he failed to do so.[7]

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Whether to apply the ends-of-justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)).

"The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice *has* occurred, not that a

---

[6] Combined, the indicted charges presented a potential sentencing exposure of 88 years. *See* Code §§ 18.2-10, 18.2-22, 18.2-32, 18.2-53, 18.2-53.1, 18.2-279.

[7] Nicol "submits that he did not become aware of his inadequate understanding of the charges and their elements until after the . . . sentencing hearing, by which time he had no opportunity to object to the unknowing, unintelligent, and consequently involuntary nature of the pleas he had entered to the charges against him." That Nicol later changed his mind about his pleas does not speak to whether he, at the appropriate time, was presented with an opportunity to object. The opportunity was available, and he elected not to object. *See Perry*, 58 Va. App. at 667.

- 7 -

miscarriage *might* have occurred." *Melick*, 69 Va. App. at 146 (emphasis omitted and added) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). Further, to demonstrate that a miscarriage of justice has occurred, "[i]t is never enough for the defendant to merely assert a winning argument on the merits—for if that were enough[,] procedural default 'would never apply, except when it does not matter.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546 (2013) (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)).

Instead, application of the exception requires "a defendant to present not only a winning argument on appeal but also one demonstrating that the trial court's error results in a 'grave injustice' or a wholly inexcusable 'denial of essential rights.'" *Id.* at 546-47 (quoting *Brittle*, 54 Va. App. at 513). The ends-of-justice exception "requires proof of an error that was 'clear, substantial and material.'" *West v. Commonwealth*, 43 Va. App. 327, 338 (2004) (quoting *Brown v. Commonwealth*, 8 Va. App. 126, 132 (1989)). That is, "[w]e must determine whether the error clearly had an effect upon the outcome of the case." *Phoung v. Commonwealth*, 15 Va. App. 457, 464 (1992) (quoting *Brown*, 8 Va. App. at 131).

"A plea of guilty constitutes a 'self-supplied conviction.'" *Allen v. Commonwealth*, 27 Va. App. 726, 730 (1998) (quoting *Peyton v. King*, 210 Va. 194, 196 (1969)). Such a "plea . . . is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Thus, to withstand scrutiny on appeal, the record must contain "an affirmative showing that [the guilty plea] was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). As such, Rule 3A:8(b)(1) "requires that prior to accepting a defendant's plea, the trial court must determine if the defendant is aware of his constitutional rights, the nature of the charges against him, and whether the plea is intelligently and voluntarily made, all of which must appear on the

record." *Zigta v. Commonwealth*, 38 Va. App. 149, 157 (2002) (citing *Sisk v. Commonwealth*, 3 Va. App. 459, 463 (1986)).

This record demonstrates that the trial court conducted a thorough plea colloquy with Nicol, in which Nicol confirmed that he had discussed the charges and their elements with his attorney. Nicol acknowledged he understood what "the Commonwealth must prove" before he could be found guilty. He further confirmed that his attorney "advised [him] of the minimum and maximum punishments allowed by law for these charges." In addition, Nicol confirmed that he understood that he was waiving his right to plead not guilty and to a jury trial. Nicol confirmed that no one had made any threats or promises, other than the nolle prosequied charges, to induce his *Alford* pleas. Counsel averred that he had reviewed the charges, the evidence, and the "pros and cons" of proceeding to trial or entering the *Alford* pleas. Counsel also averred that he had provided Nicol with an *Alford* plea of guilty form, and "reviewed th[at] particular . . . form with him," and desired to "put that on the record."

No authority requires that the trial court review each specific element of each offense for Nicol's *Alford* pleas to be valid, and we are unpersuaded by his contrary argument. "A circuit court may not accept a plea of guilty . . . without first determining that the plea is made . . . with an understanding of *the nature* of the charge and the consequences of the plea." Rule 3A:8(b)(1) (emphasis added); *see also* Rule 7C:6; *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (holding that a defendant must receive "real notice of the true *nature* of the charge against him" for a plea to be voluntary (emphasis added) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941))). Here, Nicol confirmed that he understood the charges against him and what the Commonwealth had to prove for the trial court to find him guilty of those charges. After affirming the same, and after hearing the Commonwealth's proffer, Nicol elected to plead guilty under *Alford*. Thus, he was

aware of the nature of his charges and, while he maintained his innocence, understood that a rational trier of fact could convict him based on the Commonwealth's evidence.[8]

Nicol relies on *Henderson v. Morgan*, 426 U.S. 637 (1976), for the proposition that a "defendant must be given notice of the essential elements of the crime and of the range of possible penalties." However, Nicol's reliance on *Henderson* is misplaced. In *Henderson*, the plea colloquy featured no discussion of the elements of the offense, nor an "indication that the nature of the offense had *ever* been discussed with [the appellant]," and failed to establish that appellant had even a rudimentary understanding of the crime with which he was charged. 426 U.S. at 643 (emphasis added). Further, the trial court specifically "found as a fact that the element of intent was not explained to [the appellant]." *Id.* at 647. Thus, the colloquy was insufficient. *Id.* at 646-47. Here, the trial court made no such finding. To the contrary, the trial court asked Nicol if he "fully" understood his charges and the elements that the Commonwealth would need to prove for him to be found guilty. Nicol responded affirmatively. It was not error, under *Henderson*, for the trial court to accept Nicol's answer on its face. *See id.*

Nicol also argues that his *Alford* pleas were not knowing and voluntary because the record does not demonstrate that he was advised of various "collateral consequences" of his pleas. This argument lacks merit. "For a guilty plea to be constitutionally valid, a defendant must be made aware of all the direct, but not the collateral, consequences of his plea." *Brown v. Commonwealth*, 297 Va. 295, 302 (2019) (quoting *Meyer v. Branker*, 506 F.3d 358, 367-68 (4th Cir. 2007)). "Courts reason that the lone concern is the case in which the plea is entered. Future or contemplated, but uncertain, consequences are irrelevant to the validity of the guilty plea." *Id.*

---

[8] We reject Nicol's assertion that trial counsel's "lengthy" arguments that Nicol was innocent at the plea colloquy, in the sentencing memorandum, and at the sentencing hearing "were inconsistent with *Alford* pleas and appeared to be attempts to negate or disavow" the pleas. To the contrary, the entire purpose of an *Alford* plea is to allow the defendant to maintain his innocence while availing himself of the benefits of pleading guilty. *See Alford*, 400 U.S. 25.

(quoting *People v. Williams*, 721 N.E.2d 539, 544 (Ill. 1999)).  Indeed, a "trial court is not required to discuss every nuance of the law regarding a defendant's plea in order to render a guilty plea voluntary and knowing."  *Zigta*, 38 Va. App. at 154.[9]

Finally, Nicol argues that the plea colloquy was deficient because the trial court did not ask questions 18 and 19 from the "Suggested Questions to Be Put by the Court to an Accused Who Has Pleaded Guilty," found in an appendix to the Rules of the Supreme Court of Virginia. *See* Va. Sup. Ct. R. Pt. 3A, App. Form 6.  The questions query whether a defendant understands that, "by pleading guilty/no contest," they are waiving "basic rights," including to a jury trial, against self-incrimination, to confront and cross-examine witnesses, and to present a defense on their own behalf.  Because the trial court did not ask both questions verbatim Nicol argues that "the record thus failed to establish that [his] *Alford* pleas were knowingly and intelligently entered into."  We disagree.

"One who voluntarily and intelligently pleads guilty waives important constitutional rights," *Allen*, 27 Va. App. at 730, among which "are the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers," *Jones v. Commonwealth*, 29 Va. App. 503, 510 (1999) (citing *Boykin*, 395 U.S. at 243; *Dowell v. Commonwealth*, 12 Va. App. 1145, 1148-49 (1991), *aff'd en banc*, 14 Va. App. 58 (1992)).  "In order to ensure *these* rights are adequately protected, the trial court must determine whether a defendant's decision to waive them by pleading guilty 'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Id.* at 511 (emphasis

---

[9] Nicol also uses *Padilla* to suggest that the failure to advise him of those collateral consequences rendered his pleas invalid.  Nicol is mistaken as to *Padilla*'s import.  In *Padilla*, the Supreme Court considered whether, to satisfy the Sixth Amendment, a trial attorney must advise her client if a criminal plea "carries a risk of deportation."  559 U.S. at 374.  Nicol has presented no evidence or argument suggesting that he would be subject to deportation as a consequence of his convictions.

added) (quoting *Alford*, 400 U.S. at 31). "Moreover, the presumption against the waiver of constitutional rights forbids the relinquishment of those rights by mere silence." *Allen*, 27 Va. App. at 731. *Cf. Boykin*, 395 U.S. at 243 ("We cannot presume a waiver of these three important federal rights from a silent record."). Instead, "[f]or this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.'" *McCarthy v. U.S.*, 394 U.S. 459, 466 (1969) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). To fulfill these requirements, trial courts need not read from a fixed script or conform to a single liturgy. Indeed, satisfying the Constitution's guarantees does not require a "specific monition as to the several constitutional rights waived by entry of the plea." *Wade v. Coiner*, 468 F.2d 1059, 1060 (4th Cir. 1972).

Nicol fails to show that the trial court erred in accepting his pleas, much less that there was a miscarriage of justice sufficient to satisfy the ends-of-justice exception. To the contrary, the record shows that Nicol entered the pleas with, among other things, an understanding of the charges and the elements the Commonwealth would need to prove to secure a conviction, including the recitation of a very detailed proffer by the Commonwealth. Significantly, Nicol also acknowledged that in pleading guilty under *Alford* he was waiving his right to a jury trial as well as his right to plead not guilty, that he had discussed defenses with counsel, and that the Commonwealth's evidence was sufficient to support a finding of guilt. In addition, Nicol's counsel volunteered for the record that he had reviewed an *Alford* plea of guilty form with Nicol. The considerable breadth of the plea colloquy, when combined with these other salient facts, defeats Nicol's argument that his pleas were not entered knowingly and voluntarily.

Accordingly, no exception to Rule 5A:18 applies here.

## II. Sentencing

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)).

Nicol argues that the trial court abused its discretion by not considering his mitigating evidence—specifically, his youth and his "many good and redeeming qualities," as evinced by the numerous character letters he submitted. But the record shows that the trial court considered the letters as well as Nicol's age. It was within the trial court's purview to weigh the mitigating circumstances Nicol presented. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000).

Under settled principles, we may consider only whether the sentence fell outside the permissible statutory range. *See Minh Duy Du*, 292 Va. at 564; *Smith v. Commonwealth*, 26 Va. App. 620, 626 (1998); *Valentine v. Commonwealth*, 18 Va. App. 334, 339 (1994). "It lies within the province of the legislature to define and classify crimes and to determine the punishments for those crimes." *DePriest v. Commonwealth*, 33 Va. App. 754, 764 (2000). The record establishes that the trial court carefully weighed the evidence before it and pronounced what it determined to be the proper and individualized sentence that the facts and circumstances warranted. "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Nicol was sentenced within the statutory ranges set by the legislature. *See* Code §§ 18.2-10, 18.2-35, 18.2-53. Thus, our review is complete.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*