Tuesday           13th

January, 2004.

Nicko Bazemore,                                      Appellant,

  against           Record No. 0103-02-1
                       Circuit Court Nos. CR00M00315 and CR00F00819
                              through CR00F00821

Commonwealth of Virginia,                               Appellee.

Upon a Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata, Bumgardner,
Frank, Humphreys, Clements and Felton

For reasons stated in writing and filed with the record, those parts of the opinion previously rendered by a panel of this Court on May 13, 2003 with regard to appellant's convictions of felony eluding the police and second degree murder are withdrawn, those parts of the mandate entered on that date pertaining to the said convictions are vacated and appellant's convictions of grand larceny by receiving stolen property (CR00F00821), felony eluding the police (CR00F00820) and second degree murder (CR00F00819) are affirmed.

Appellant's conviction of driving on a suspended license (CR00M00315) was not challenged on appeal.

This matter is remanded to the trial court to correct the final conviction order by inserting a reference to Code § 18.2-108.

This order shall be certified to the trial court.

A Copy,

Teste:

                                 Cynthia L. McCoy, Clerk

By:

                                 Deputy Clerk

COURT OF APPEALS OF VIRGINIA

Present    Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata, Bumgardner, Frank,
           Humphreys, Clements and Felton
Argued at Richmond, Virginia


NICKO BAZEMORE

                                                              OPINION BY
v.        Record No. 0103-02-1                      JUDGE ROBERT J. HUMPHREYS
                                                            JANUARY 13, 2004
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Westbrook J. Parker, Judge

Andrew G. Wiggin for appellant.

Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


This matter comes before the Court on a rehearing *en banc* from an unpublished panel

decision rendered May 13, 2003. See Bazemore v. Commonwealth, 03 Vap UNP 0103021

(2003). In that decision, a divided panel of this Court affirmed Nicko Bazemore's conviction for

grand larceny, but reversed his convictions for feloniously eluding police and second degree

murder. By order dated June 12, 2003, we granted the Commonwealth's petition for a rehearing

*en banc*, stayed the mandate of that decision, and reinstated the appeal. Upon rehearing this case

*en banc*, we affirm each of Bazemore's convictions.

I. Background

"When an appellant challenges the sufficiency of the evidence to sustain his conviction,

we review the evidence in the light most favorable to the Commonwealth and grant to it 'all

reasonable inferences fairly deducible therefrom.'" Kelley v. Commonwealth, 17 Va. App. 540,

548, 439 S.E.2d 616, 621 (1994) (citation omitted). So viewed, the evidence presented during Bazemore's trial proved that on the morning of August 4, 2000, Officer M.C. Marshall noticed a broken rear window on a green minivan in the City of Suffolk and received information that the license plates on the minivan were registered to another vehicle. When Officer Marshall activated the siren and lights on his police car, the driver of the green minivan continued to drive.

During Officer Marshall's pursuit of the green minivan, which covered a little more than a mile in relatively heavy traffic, the driver of the minivan failed to heed two stop signs, accelerated to 50 miles per hour, and later decreased his speed "to . . . 10 miles an hour." The green minivan made a series of turns, failed to heed another stop sign, and struck another minivan after entering the intersection. Officer Marshall could not estimate the vehicle's speed; however, he testified that his own speed was "approximately 15 to 20 miles an hour" when the green minivan entered the intersection. A witness described the green minivan as "shooting across the intersection."

After the green minivan hit the other minivan, yet another vehicle hit the other minivan. A passenger in the minivan that was hit sustained a fractured cervical spine and died. After the collision, the green minivan spun off the road and crashed into a nearby house.

As Officer Marshall approached the green minivan, he observed Greg Shorter leave the van through the front passenger door. Officer Marshall also observed Bazemore moving from the driver's seat and attempting to exit through the front passenger door. Officer Marshall then arrested Shorter and Bazemore. Denise Byron, another passenger in the green minivan, was found lying on the ground, after having been thrown from the van when it hit the house.

When the rescue squad arrived, Bazemore complained of pain and told officers responding to the scene that he was driving the green minivan when it crashed. Officers observed that Bazemore was wearing one shoe. Inside the green minivan, officers found

–3–

Bazemore's other shoe under the brake pedal. They also found a 9-mm handgun, a screwdriver, and a Florida license plate. The minivan's ignition had been damaged, and a rag was covering the steering column. The evidence proved that the green minivan had been stolen two days earlier in the City of Norfolk and that broken glass was found on the pavement after it had been stolen.

Several hours after police arrested Bazemore, he waived his Miranda rights. Bazemore initially told the police that a friend, whom he only knew as "Malik," and Shorter offered him a ride at 9:00 p.m. on the night before the accident. Bazemore said that he noticed the screwdriver on the floor and the broken window and that Malik told him he had gotten the van from Norfolk. Bazemore also said he learned within two hours that the van had been stolen. Later, Byron joined them and sat in the rear area of the van.

Bazemore told police he began driving the vehicle at 3:00 a.m. He also said that after the officer attempted to stop the vehicle, he believed the vehicle might be stolen. When asked "Why didn't you stop the vehicle?," he responded "I was scared." As the interview progressed, Bazemore said that Malik did not exist and that when he entered the minivan, Shorter was the driver and sole occupant. Bazemore admitted he was driving the van when the accident occurred and could not recall his speed because "it happened so quick."

On October 25, 2000, the grand jury for the City of Suffolk indicted Bazemore on charges of grand larceny, "in violation of [Code]§ 18.2-95," felony eluding police, in violation of Code §§ 46.2-817 and 18.2-10, and second degree murder. The indictment for second degree murder stated that Bazemore "unlawfully and feloniously while in the prosecution of a felonious act, accidentally, contrary to the intention of the parties, did kill and murder . . . in violation of [Code] §§ 18.2-33, 18.2-32, and 18.2-26."

-4-

During his trial, after the trial judge had denied Bazemore's motion to strike the evidence, Bazemore testified that Shorter, who is also called "Malik," was driving the green minivan when he entered it. They spent the hours before the incident driving to various places. Bazemore testified he was driving when Byron joined them at 5:30 or 6:00 in the morning, but he denied seeing the broken steering column. Although he knew Shorter did not own the minivan and did not have money to buy a vehicle, he did not ask Shorter where he obtained it or who owned it.

Bazemore also testified that, after the police signaled him to stop and began to pursue him, he and Shorter switched places in the moving vehicle. He said that Shorter was driving when the vehicle entered the intersection and that he did not remember telling police he was driving when the collision occurred. Despite his previous statement to police that he had not seen a gun in the van, Bazemore testified that Shorter displayed the gun, said he was not going back to prison, and ignored Bazemore's and Byron's requests to stop. Bazemore also testified that after the accident, Shorter crawled across him from the driver seat to get out of the van. He testified that he lied to the police in the interview to protect Shorter because he "was afraid of everything that was going on around him" and afraid of Shorter.

The jury convicted Bazemore of "grand larceny by receiving stolen property," of the "felony . . . of disregarding the signal of a law enforcement officer," and of "felony homicide." The final conviction order denotes the convictions as "Grand Larceny ([Code] § 18.2-95)," "Eluding Police-Endangerment (§ 46.2-81[7](B) (Felony)," and "Second Degree Murder (§ 18.2-32) (Felony)."

## II. Analysis

On appeal, Bazemore contends (1) the evidence was insufficient to support the convictions, (2) the trial judge erred by refusing to give the jury an instruction defining the word "wanton," and (3) the trial judge erred by failing to properly instruct the jury on the elements of

–5–

the offense of feloniously eluding the police and, thus, permitted the jury to improperly convict him of feloniously eluding the police and felony homicide. For the reasons that follow, we affirm Bazemore's convictions.

A.

Bazemore first contends the evidence was insufficient to support his conviction for grand larceny by receiving stolen property. Specifically, he argues the evidence was insufficient to prove he knew the vehicle was stolen, intended to permanently deprive the owner of the vehicle, and had dishonest intent.

We first note, in regard to this argument, that Bazemore contends the evidence was insufficient to convict him of violating Code § 18.2-108. The final conviction order recites, however, that the conviction was for grand larceny in violation of Code § 18.2-95, which was the charge specified in the indictment. Although neither Bazemore nor the Commonwealth addressed this discrepancy, we address it for purposes of clarity.

The record reflects that the trial judge's instructions permitted the jury to convict Bazemore of "grand larceny," which was the offense charged in the indictment, or to convict him of other lesser offenses, including "grand larceny by receiving stolen property." The verdict form establishes that the jury convicted Bazemore of "grand larceny by receiving stolen property," which is prohibited by Code § 18.2-108. Following the guilt phase of the trial, the jury fixed Bazemore's punishment at one year in prison for "grand larceny by receiving stolen property." Consistent with the jury's findings, the trial judge entered an order reflecting that the jury convicted Bazemore and fixed his sentence for "grand larceny by receiving stolen property." The final conviction order, however, contains no reference to Code § 18.2-108 and recites only that Bazemore was convicted of "grand larceny ([Code] § 18.2-95)."

The Supreme Court has held that "[r]eceiving stolen goods, knowing the same to be stolen, may be charged as larceny." Clark v. Commonwealth, 135 Va. 490, 498, 115 S.E. 704, 706 (1923), overruled on other grounds by Chittum v. Commonwealth, 211 Va. 12, 174 S.E.2d 779 (1970). See also Cabbler v. Commonwealth, 212 Va. 520, 524, 184 S.E.2d 781, 783 (1971) (holding that "[l]arceny by receiving stolen goods is a lesser offense which is included in the major one of larceny"). In view of these decisions, the jury's verdict forms, and the trial judge's order entered upon the jury's verdict, we hold that the trial judge's failure to include a reference to Code § 18.2-108 on the final conviction order was a mere clerical error. We further remand this matter to the trial court for the limited purpose of correcting that error.

Turning to the merits of Bazemore's argument, we recognize that Code § 18.2-108 provides that "[i]f any person buy or receive from another person, or aid in concealing, any stolen goods or other thing, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof, and may be proceeded against, although the principal offender be not convicted." We have described the elements of the offense as follows:

> "To convict a defendant under Code § 18.2-108, the Commonwealth must prove that property 'was (1) previously stolen by another, and (2) received by defendant, (3) with knowledge of the theft, and (4) a dishonest intent.' Guilty knowledge 'is sufficiently shown if the circumstances proven are such as must have made or caused the recipient of stolen goods to believe they were stolen.'" Shaver v. Commonwealth, 30 Va. App. 789, 800-01, 520 S.E.2d 393, 399 (1999). "Guilty knowledge . . . [a]bsent proof of an admission against interest, . . . necessarily must be shown by circumstantial evidence." Lewis v. Commonwealth, 225 Va. 497, 503, 303 S.E.2d 890, 893 (1983).

Snow v. Commonwealth, 33 Va. App. 766, 775, 537 S.E.2d 6, 11 (2000).

The evidence in the case at bar, when viewed in the light most favorable to the Commonwealth, proved that Bazemore confessed to police that shortly after he entered the green minivan, he learned it had been stolen. He also saw the minivan's broken window and the

–7–

screwdriver on the floor. Thus, by Bazemore's own admission, he knew he was driving a stolen vehicle before he failed to heed the officer's signal. The evidence also proved Bazemore admitted to an inmate in jail that he knew the vehicle was stolen. Moreover, apart from his own confession and the testimony of an inmate, the evidence proved Bazemore was driving the vehicle in daylight and had the opportunity to see the "popped" ignition, the broken steering column, and a rag covering the steering column.

The jury was not required to accept Bazemore's trial testimony. Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). It was free to believe or disbelieve, in part or in whole, the testimony of any witness. Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991). Although Bazemore's testimony differed from his confession, "the jury was 'not obliged to accept' what it obviously found was an unreasonable explanation," Roberts v. Commonwealth, 230 Va. 264, 272, 337 S.E.2d 255, 260 (1985), and was free to believe his confessed participation. We hold the evidence was sufficient for the jury to find beyond a reasonable doubt that Bazemore knew the vehicle was stolen when he drove it.

Bazemore also contends the evidence was insufficient to prove he intended to permanently deprive the owner of the minivan. However, Bazemore's reliance on Moehring v. Commonwealth, 223 Va. 564, 290 S.E.2d 891 (1982), to support his defense that he had no intent to permanently deprive is misplaced. The Supreme Court noted the following in reversing Moehring's conviction:

> There is no evidence in the record which demonstrates that Moehring exercised any degree of dominion or control over the stolen truck, or from which the court could have inferred that defendant possessed the truck jointly with Faison. . . . The most that can be said with reasonable certainty is that this defendant-hitchhiker accepted a ride from the first person who stopped and that he knew that person was driving a stolen vehicle.

Id. at 568, 290 S.E.2d at 893. Pertinent to the evidence in this case, the Supreme Court of Virginia in Moehring restated the well-settled rule that "[b]ecause larceny is a continuing offense, anyone who knows that personal property is stolen and assists in its transportation or disposition is guilty of larceny." Id. The evidence here proved beyond a reasonable doubt that Bazemore knew the vehicle was stolen and drove it with that knowledge.

Bazemore further argues that the evidence was insufficient to prove he had dishonest intent. We have consistently held, however, that issues that were not properly preserved at trial cannot be raised on appeal. Andrews v. Commonwealth, 37 Va. App. 479, 493, 559 S.E.2d 401, 408 (2002). Bazemore never raised the argument of dishonest intent before the trial court. Because, on this record, we find no reason to consider this argument pursuant to the "good cause" or "ends of justice" exceptions to Rule 5A:18, we do not review this issue, raised for the first time on appeal. See Rule 5A:18.

B.

Bazemore next contends on appeal that the trial judge erred in failing to instruct the jury on the definition of "wanton." Bazemore argues that because of this error his convictions for felony eluding police and felony homicide must be reversed.

To prove a violation of Code § 46.2-817, the Commonwealth had to prove Bazemore drove the "motor vehicle in a willful and wanton disregard" of the officer's signal. Nevertheless, Bazemore did not ask the judge to instruct the jury concerning the definition of "wanton." Therefore, we will not review the issue for the first time on appeal. See Rule 5A:18. Furthermore, we find that this record provides no basis to consider this claim under the exceptions to Rule 5A:18.

C.

In his final arguments on appeal, Bazemore contends the evidence was insufficient to prove he wantonly disregarded the officer's signal to stop. He also contends the trial judge incorrectly instructed the jury concerning the elements of Code § 46.2-817 by placing the elements of "willfull" and "wanton" in the disjunctive, rather than in the conjunctive. Consequently, Bazemore argues his felony eluding conviction should be reversed and, because his felony homicide conviction was contingent upon the felony eluding conviction, that conviction must also be reversed.

At the close of the Commonwealth's evidence, Bazemore's trial attorney made a motion to strike. He conceded Bazemore operated the minivan. He argued, however, that because Bazemore did not know the minivan was stolen, the evidence failed to prove grand larceny. Thus, he argued that grand larceny, which he asserted should have been the predicate offense for felony homicide, was not proved. He then argued as follows:

> I would submit . . . that the eluding is a separate and distinct crime, that the essence of which is [failure] to heed the police signal to stop under circumstances that create danger to the motoring or pedestrian traffic. . . . I would submit, Judge, that that is not a sufficient predicate for felony murder to apply.

At the conclusion of the evidence, Bazemore's trial attorney also moved to strike the evidence concerning the eluding charge, asserting "there [wasn't] any real clear, intelligent evidence that [Bazemore] was actually operating the vehicle for any length of time that the vehicle failed to stop when the blue lights were on and the car was being driven in such fashion as to endanger." Bazemore's attorney argued, that because credible evidence proved Shorter had switched places with Bazemore, "[t]here's no evidence to clearly demonstrate that anyone was endangered at any time for a felony eluding when [Bazemore] was operating the vehicle. And the evidence before you is that when he wanted to stop, he couldn't stop because [Shorter] had

brandished a weapon . . . and said, 'Drive on.'" Summarizing, Bazemore's trial attorney argued as follows:

> [T]hey have to prove for the reckless endangerment element that the defendant was driving at the time to create a danger to the motoring or pedestrian public. They can't do that. We would have to guess, the Court would have to guess at [the] point that endangerment occurred. So I would submit, Your Honor, that the charge of felony eluding, likewise, has to fall because there is insufficient evidence to support the conclusion that at the relevant time that the defendant was actually driving a car or this van to endanger the motoring public.

As to the felony-homicide charge, he argued as follows:

> We would also . . . move to strike the Commonwealth's evidence as to second degree murder. It's clear that this was an accident, that whoever was driving that it was not the intended purpose to do that, and . . . the evidence before the Court is that the defendant was not the operator of the vehicle at the time of the collision.

These arguments, which the trial judge rejected, also formed the gist of Bazemore's counsel's closing argument to the jury. Urging the jury to analyze "the elements of the offenses," he discussed in detail the elements of the larceny offense. As to "the eluding," he posed the question, "where is the evidence that Nicko Bazemore was operating . . . the [vehicle] at any time that created a danger to the public?" Thus, he argued:

> So, if, indeed, you conclude that [Bazemore] was not the driver of the [vehicle] at the time of the collision, he could not be convicted of felony murder. If you believe that he was not driving at any time when the vehicle presented a danger to the motoring public, he could not be convicted of eluding a felony.

At all stages of the trial, Bazemore contended he was not driving when the vehicle entered the intersection in disregard of the stop sign and collided with the van. At no point did he object that the evidence was insufficient to prove the element of "wanton." The failure to raise these issues at trial bars our consideration of them on appeal. Rule 5A:18. See Floyd v. Commonwealth, 219 Va. 575, 583-85, 249 S.E.2d 171, 176 (1978) (holding that appellate review of the issue of

-11-

insufficiency to prove a specific element is barred when that issue was not raised at trial).

Moreover, in view of the arguments Bazemore actually advanced at trial and the evidence produced, we conclude that no basis exists to invoke the exceptions to Rule 5A:18.

We find that we are likewise precluded from considering Bazemore's final contention that the trial judge erred in instructing the jury on the elements of the offense of eluding. The instruction given, read as follows:

> The Court instructs the jury that the defendant is charged with a felony crime of disregarding a signal of a law enforcement officer to stop. The Commonwealth must prove beyond a reasonable doubt each of the following elements of a crime. Number 1, that the defendant was driving a motor vehicle; and Number 2, that he received a visible and/or audible signal from a law enforcement officer to bring his motor vehicle to a stop; and Number 3, that he willfully or wantonly disregarded such signal so as to endanger any person. . . .

The record reflects that Bazemore did not object to the jury instruction in any manner. Indeed, Bazemore does not dispute his failure to raise an objection below, but contends that we must address this issue because it falls within the "ends of justice" exception to Rule 5A:18.

We begin our analysis by recognizing that Code § 46.2-817 provides that

> [a]ny person who, having received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop, drives such motor vehicle in a willful *and* wanton disregard of such signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person is guilty of a Class 6 felony.

(Emphasis added). The trial judge instructed the jury that the Commonwealth was required to "prove beyond a reasonable doubt . . . that [Bazemore] willfully *or* wantonly disregarded such signal so as to endanger any person." (Emphasis added).[1] The parties do not dispute the fact that the instruction, as given, was an incorrect statement of law.

---

[1] The General Assembly amended Code § 46.2-817 in 1999, effective July 1, 2000, and substituted "and" for "or" preceding the words "wanton disregard." See 1999 Va. Acts, ch. 720.

Nevertheless,

> [u]nder Rule 5A:18 we do not notice the trial errors for which no timely objection was made except in extraordinary situations when necessary to enable us to attain the ends of justice. The laudatory purpose behind Rule 5A:18, and its equivalent Supreme Court Rule 5:25, frequently referred to as the contemporaneous objection rules, is to require that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary. The rules promote orderly and efficient justice and are to be strictly enforced except where the error has resulted in manifest injustice. Errors can usually be corrected in the trial court, particularly in a bench trial, without the necessity of appeal. Because our function is to review the rulings of the trial court, rather than superintend the proceedings, we will notice error for which there has been no timely objection only when necessary to satisfy the ends of justice.

Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989) (citation omitted).

"'The ends of justice exception is narrow and is to be used sparingly.'" Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997) (quoting Brown, 8 Va. App. at 132, 380 S.E.2d at 10)). Additionally, the record must "affirmatively show[] that a miscarriage of justice has occurred not . . . that a miscarriage *might* have occurred." Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987) (emphasis in original). This requires a defendant "to affirmatively show [that] . . . that the error [was] clear, substantial and material." Brown, 8 Va. App. at 132, 380 S.E.2d at 11 (alterations in original).

The Supreme Court of Virginia has held that the "ends of justice" exception applies to permit review when a "granted instruction omitted some essential elements of the offense" and "no evidence was produced relating to those elements." Jimenez v. Commonwealth, 241 Va. 244, 251, 402 S.E.2d 678, 681-82 (1991). In Campbell v. Commonwealth, 14 Va. App. 988, 994, 421 S.E.2d 652, 656 (1992), this Court similarly held that the exception applies to permit our review of an instruction that "allows a jury to convict a defendant without proof of an essential and necessary element of the charged offense."

-13-

However, neither the Supreme Court of Virginia, nor this Court, has held that we must always apply the ends of justice exception in cases involving faulty jury instructions to which no objection was noted below – even where such faulty instructions improperly stated the elements of an offense. See Phoung v. Commonwealth, 15 Va. App. 457, 464-65, 424 S.E.2d 712, 716 (1992) (refusing to consider, for the first time on appeal, defendant's contention that the trial court improperly instructed the jury on the elements of a burglary charge). Indeed, to do so would require us to raise such failures on the part of counsel to the effective level of a jurisdictional component. See Nelson v. Warden, 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001) (noting that subject matter jurisdiction is granted by constitution or statute and cannot be waived, so that any judgment rendered without it is void *ab initio,* and that lack of subject matter jurisdiction may be raised at any time, in any manner, before any court, or by the court itself (citations omitted)). We decline to take such a leap here.

Moreover, the "broad application of the ends of justice exception" suggested by Bazemore,

> would undermine the trial court's ability to correct errors in the trial court and thereby frustrate the ends of justice, not prevent a miscarriage of justice. [S]uch an expansion of the exception would also encourage trial counsel to stand mute . . . thereby knowingly inviting the trial judge to commit error without having a sufficient opportunity to rule upon the issue.

Redman, 25 Va. App. at 221, 487 S.E.2d at 273.

In this context, the Supreme Court of Virginia has recognized that "[i]t is axiomatic that '[i]t belongs to the [trial] court to instruct the jury as to the law, whenever they require instruction, or either of the parties request it to be given.'" Fishback v. Commonwealth, 260 Va. 104, 117, 532 S.E.2d 629, 635 (2000) (quoting Thornton v. Commonwealth, 65 Va. (24 Gratt.) 657, 662 (1874)). The Court has stated that courts of this Commonwealth

"adhere to the rule that the trial court is not required to amend or correct an erroneous instruction, but the rule is subject to the limitation that when the principle of law is materially vital to a defendant in a criminal case, it is reversible error for the trial court to refuse a defective instruction instead of correcting it and giving it in the proper form."

[Fishback, 260 Va. at 117, 532 S.E.2d at 635] (quoting Whaley v. Commonwealth, 214 Va. 353, 355-56, 200 S.E.2d 556, 558 (1973)).

In contrast, a circuit court ordinarily does not have an affirmative duty to give a jury instruction on a particular legal principle when a criminal defendant fails to request that the jury be instructed on that principle. We have regularly applied this rule in criminal cases.

Commonwealth v. Jerman, 263 Va. 88, 93, 556 S.E.2d 754, 757 (2002).

In view of these principles, it is clear that, when properly understood, the Supreme Court of Virginia's decision in Jimenez, as well as our decision in Campbell, demonstrate that this case does not represent the "extraordinary" circumstance under which we have found it necessary to overlook a defendant's failure to object to a defective jury instruction. See Phoung, 15 Va. App. at 464-65, 424 S.E.2d at 716-17.

In Jimenez, defense counsel failed to object to a jury instruction that omitted one of the elements of an offense. As a result, the instruction did not state any offense at all. Moreover, no evidence was produced at trial relating to the missing element. Finding that Jimenez was convicted of "a non-offense" and that no evidence was produced regarding the missing element, the Virginia Supreme Court held that the error was not waived by Jimenez's failure to raise it below. 241 Va. at 251, 402 S.E.2d at 681.

Id. at 465, 424 S.E.2d at 716. Specifically, the Court in Jimenez held,

[w]e also reject the Attorney General's contention that Jimenez waived his right to raise this matter on appeal because he failed to preserve the error at trial. The granted instruction omitted some essential elements of the offense. *Likewise, no evidence was produced relating to those elements. Jimenez, therefore, was convicted of a non-offense.*

Jimenez, 241 Va. at 251, 402 S.E.2d at 681-82 (emphases added).

Campbell involved a trial for forgery of a public document. 14 Va. App. at 990, 421 S.E.2d at 653. Although the issue of intent was adamantly contested by the defendant, id. at 1005-06, 421 S.E.2d at 662 (Moon, J., dissenting), the jury instruction "essentially eliminated intent to defraud as an element of the offense." Phoung, 15 Va. App. at 465, 424 S.E.2d at 717. "We held that a manifest injustice had occurred because the 'instructions given by the trial court relieved the Commonwealth of its burden to prove criminal intent,' and permitted the jury to convict Campbell 'for otherwise innocent behavior.'" Id. (quoting Campbell, 14 Va. App. at 992, 995, 421 S.E.2d at 655-56).

Here, no such obvious miscarriage of justice occurred. Unlike the factual scenario in Jimenez, the evidence that Bazemore "willfully and wantonly" disregarded Officer Marshall's signal, so as to "endanger any person" was overwhelming. In the civil context, the Supreme Court long ago defined willful and wanton conduct as follows:

> [W]illfulness and wantonness convey the idea of purpose or design, actual or constructive. . . . [T]hey are used to signify a higher degree of neglect than gross negligence. "In order that one may be held guilty of willful or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result."

Thomas v. Snow, 162 Va. 654, 660, 174 S.E. 837, 839 (1934) (citation omitted). See also Infant C. v. Boy Scouts of America Inc., 239 Va. 572, 581, 391 S.E.2d 322, 327 (1990). This definition requires a showing of recklessness plus additional culpability.

> "Wanton differs from reckless both as to the actual state of mind and as to the degree of culpability. One who is acting recklessly is fully aware of the unreasonable risk he is creating, but may be trying and hoping to avoid any harm. One acting wantonly may be creating no greater risk of harm, but he is not trying to avoid it and is indifferent to whether harm results or not. Wanton conduct has properly been characterized as 'vicious' and rates extreme in the

degree of culpability. The two are not mutually exclusive.
Wanton conduct is reckless plus, so to speak."

Black's Law Dictionary 1576 (7th ed. 1999) (quoting Rollin M. Perkins & Ronald N. Boyce,

Criminal Law 879-80 (3d ed. 1982)).

We have held that a person violated Code § 46.2-817(B) when he ignored a signal to

stop, operated a vehicle at a high speed in violation of posted limits, passed three cars, crossed a

double solid line, "disregarded a red traffic signal at an intersection with a four-lane highway,"

and then crashed into a tree after losing control of the vehicle. Tucker v. Commonwealth, 38

Va. App. 343, 347, 564 S.E.2d 144, 146-47 (2002). On the other hand, the Supreme Court has

noted "that the intentional violation of a traffic law, without more, will not support a finding of

willful and wanton negligence." Alfonso v. Robinson, 257 Va. 540, 545, 514 S.E.2d 615, 618

(1999).

The evidence in the present case proved much more than that Bazemore intentionally

violated a traffic law. Bazemore admittedly disregarded the officer's signal to stop in an effort to

elude police. Furthermore, it is significant to note that because the jury found Bazemore guilty

of felony homicide, it is clear the jury found he was driving the minivan at the time of the fatal

collision. Thus, the evidence established that in his effort to elude police, Bazemore continued to

drive at speeds of up to 50 miles per hour in "relatively heavy" traffic, he failed to heed three

stop signs, and he drove through a busy intersection without yielding. Bazemore's failure to

yield in that intersection, which was located in a "mostly residential and small businesses area,"

caused the fatal collision. Accordingly, an examination of the record demonstrates that, whether

Bazemore acted because he was "scared" or otherwise, it would have been difficult for a rational

trier of fact to reach any conclusion other than that Bazemore drove the minivan in a manner so

as to willfully *and* wantonly disregard the police officer's signal and, therefore, place others in

danger.

Moreover, unlike the situation in Campbell, Bazemore never contested the elements of "willfulness" or "wantoness." In fact, Bazemore's only trial strategy was to claim that he was not driving the green minivan when the fatal collision occurred and/or when the "vehicle presented a danger to the motoring public." Bazemore never contested the fact that the minivan was driven in a willful and wanton manner, so as to elude police and place others in danger.

Further, the erroneous jury instruction, as given, did not allow the jury to convict Bazemore of "otherwise innocent behavior." See Campbell, 14 Va. App. at 995, 421 S.E.2d at 656. Indeed, Code § 46.2-852 states that "[i]rrespective of the maximum speeds permitted by law, any person who drives a vehicle on any highway recklessly or at a speed *or in a manner so as to endanger the life, limb, or property of any person shall be guilty of reckless driving.*" (Emphasis added). Whether the jury found, under the instruction as given, that by his driving the vehicle Bazemore willfully *or* wantonly disregarded Officer Marshall's signal, "so as to endanger any person," either classification would give rise to a finding that Bazemore committed conduct that was not "otherwise innocent behavior," but was a criminal offense. See Campbell, 14 Va. App. at 995, 421 S.E.2d at 656.

Accordingly, finding no miscarriage of justice on this record, we decline Bazemore's invitation to consider his argument pursuant to the "ends of justice" exception to Rule 5A:18.

D.

For the above-stated reasons, we find no merit in Bazemore's arguments on appeal and we, therefore, affirm his convictions for grand larceny, feloniously eluding police and second degree murder. However, we remand this matter to the circuit court, solely for purposes of correcting the final conviction order to reflect that Bazemore's conviction for grand larceny was pursuant to Code § 18.2-108.

Affirmed and remanded.

Benton, J., wit whom Elder, J., joins, concurring, in part, and dissenting, in part.

For the reasons I have previously explained in <u>Bazemore v. Commonwealth</u>, 03 Vap UNP 0103021 (2003), I would affirm Nicko Bazemore's conviction for grand larceny.  Thus, I join in Parts I and Parts II(A) of the majority opinion.  I also join in Part II(B) of the majority opinion, for the reasons I previously explained in <u>Bazemore</u>.  I do not join in Part II(C) because I would hold that the trial judge committed reversible error by omitting a significant element of the offense when he instructed the jury concerning the offense of feloniously eluding a law enforcement officer.  The error was not harmless.

I.

On appeal, Bazemore contends the trial judge erred by omitting a statutory element when instructing the jury on the elements of the offense of feloniously eluding a law enforcement officer as proscribed by Code § 46.2-817(B).  Although the Commonwealth correctly notes that Bazemore did not object at trial to the flawed instruction, I would address this issue because Bazemore's claim falls within a recognized exception to Rule 5A:18.

The Supreme Court has held that the "ends of justice" exception of Rule 5A:18 applies to permit review when there has been a failure to object to an instruction that "omitted some essential element of the offense."  <u>Jimenez v. Commonwealth</u>, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1990).  We also have held that Rule 5A:18 will not bar our review of an instruction that "allows a jury to convict a defendant without proof of an essential and necessary element of the charged offense."  <u>Campbell v. Commonwealth</u>, 14 Va. App. 988, 994, 421 S.E.2d 652, 656 (1992).

The statute defining the offense for which Bazemore was being tried provides, in pertinent part, as follows:

> Any person who, having received a visible or audible signal
> from any law-enforcement officer to bring his motor vehicle to a

> stop, drives such motor vehicle in a willful _and_ wanton disregard
> of such signal so as to interfere with or endanger the operation of
> the law-enforcement vehicle or endanger a person is guilty of a
> Class 6 felony.

Code § 46.2-817(B) (emphasis added).

The General Assembly amended Code § 46.2-817 to its present form in 1999,
substituting "and" for "or" preceding the words "wanton disregard." See 1999 Va. Acts, ch. 720.
Although this statutory change involves only one word, we must "assume that the General
Assembly's amendments to the law are purposeful and not unnecessary or vain." Virginia-Am.
Water Co. v. Prince Wm. Serv., 246 Va. 509, 517, 436 S.E.2d 618, 623 (1993).

> "As a general rule, a presumption exists that a substantive change
> in law was intended by an amendment to an existing statute."
> Thus, in construing a statute that has been amended by the General
> Assembly, we presume that the legislature acted with full
> knowledge of the law as it affected the subject matter.
> It is our task . . . to adopt a construction that gives import to
> the legislative purpose and the words used.

Commonwealth v. Bruhn, 264 Va. 597, 602, 570 S.E.2d 866, 869 (2002) (citations omitted). By
changing "or" to "and," the General Assembly significantly increased the prosecution's burden
of proof. Indeed, both parties agree that the statute in effect on the date of this incident expressly
required evidence to support a finding of "willful _and_ wanton disregard of [the officer's] signal."
Code § 46.2-817(B) (emphasis added).

The jury, however, was not required to make such a finding. When the trial judge
instructed the jury that the Commonwealth was required to "prove beyond a reasonable
doubt . . . that [Bazemore] willfully _or_ wantonly disregarded such signal so as to endanger any
person" (emphasis added), the judge's instruction incorrectly informed the jury of the law.
Simply put, the judge instructed the jury, contrary to the requirements of the amended statute, to
convict Bazemore if it found either "[t]hat he willfully _or_ wantonly disregarded such signal"
(emphasis added), not both.

A trial judge, however, "has an affirmative duty properly to instruct a jury about [every principle of law that is vital to a defendant in a criminal case]." Jimenez, 241 Va. at 250, 402 S.E.2d at 681. The proper description of the elements of the offense is vital to a defendant in a criminal case because the jury, as the finder of fact, must determine whether the prosecution has "satisf[ied] the due process requirements of the Federal Constitution . . . [to] bear the burden of proving all elements of the offense beyond a reasonable doubt." Stokes v. Warden, 226 Va. 111, 117, 306 S.E.2d 882, 885 (1983) (citing In Re Winship, 397 U.S. 358, 363 (1970)). To assure this constitutional requirement is satisfied, the judge's "imperative duty [to properly instruct the jury as to the law of the particular case] . . . is one which can neither be evaded nor surrendered." Williams v. Lynchburg Traction and Light Co., 142 Va. 425, 432, 128 S.E. 732, 734 (1925). In giving a defective jury instruction in this case, the judge allowed the jury to convict Bazemore if it found that he willfully or wantonly disregarded the signal of the law enforcement officer. By posing the elements in the disjunctive, the instruction permitted the jury to convict Bazemore of an offense that does not exist in Virginia law. See Marshall v. Commonwealth, 26 Va. App. 627, 637, 496 S.E.2d 120, 125 (1998) (noting that "we would be permitted to invoke the ends of justice exception to reverse . . . a conviction for a non-existent offense").

For these reasons, I would reject the Commonwealth's assertion that Rule 5A:18 bars our consideration of this issue. I would hold, instead, that the trial judge erred in giving the instruction that permitted the jury to convict Bazemore of a non-existent offense. Therefore, I would reverse the judgments of convictions for feloniously eluding the law enforcement officer and for felony homicide, which was predicated upon feloniously eluding the law enforcement officer.

II.

The Commonwealth contends that even if the "ends of justice" exception applies, the convictions nevertheless should be affirmed because the error was harmless. I disagree.

The trial judge's error in this case permitted the jury to convict Bazemore of a criminal offense without finding the evidence proved beyond a reasonable doubt each element of the offense. "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, [the United States Supreme Court long ago] explicitly [held] that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. at 364. Equally important, the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury." A necessary corollary to these two principles is that in a jury trial, "[t]he Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." United States v. Gaudin, 515 U.S. 506, 522-23 (1995). By instructing the jury in the disjunctive, the judge violated these principles and created error of a constitutional magnitude.

"[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967). Giving effect to the constitutional right to a trial by jury, the harmless error test requires courts to examine the basis for the jury verdict.

> Consistent with the jury-trial guarantee, the question [Chapman] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. Harmless-error review looks . . . to the basis on which "the jury *actually rested* its verdict." The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but

-22-

> whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered -- no matter how inescapable the findings to support that verdict might be -- would violate the jury-trial guarantee.

Sullivan v. Louisiana, 508 U.S. 275, 279 (1993) (citation omitted).

To establish a violation of Code § 46.2-817(B), the Commonwealth must prove, according to the statute's express language, that Bazemore operated the vehicle in a "willful *and* wanton disregard of [the officer's] signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person." (Emphasis added). Quoting United States v. Murdock, 290 U.S. 389, 394 (1933), we have defined willful as follows:

> "The word [willful] often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But when used in a criminal statute it generally means an act done with a bad purpose; without justifiable excuse; stubbornly, obstinately, perversely. The word is also employed to characterize a thing done without ground for believing it is lawful. . . ."

Snead v. Commonwealth, 11 Va. App. 643, 646-47, 400 S.E.2d 806, 807 (1991). More precisely, the United States Supreme Court has held that to act willfully a criminal defendant must know that his acts violate the law. Ratzlaf v. United States, 510 U.S. 135, 136-37 (1994). "[I]n the criminal law [willfull] . . . typically refers to a culpable state of mind." Bryan v. United States, 524 U.S. 184, 191 (1998).

To prove the other necessary element of the offense, wanton disregard, the evidence must show recklessness plus additional culpability. See Town of Big Stone Gap v. Johnson, 184 Va. 375, 379, 35 S.E.2d 71, 73 (1945) (citing Webster's New International Dictionary, 2d ed.).

> "Wanton differs from reckless both as to the actual state of mind and as to the degree of culpability. One who is acting recklessly is fully aware of the unreasonable risk he is creating, but may be trying and hoping to avoid any harm. One acting wantonly may be creating no greater risk of harm, but he is not trying to avoid it and is indifferent to whether harm results or not. Wanton conduct has

-23-

properly been characterized as 'vicious' and rates extreme in the degree of culpability. The two are not mutually exclusive. Wanton conduct is reckless plus, so to speak."

Black's Law Dictionary 1576 (7th ed. 1999) (quoting Rollin M. Perkins & Ronald N. Boyce,

Criminal Law 879-80 (3d ed. 1982)).

Because the trial judge incorrectly instructed the jury by placing the statutory elements of

"willful" and "wanton" in the disjunctive, we cannot have any degree of confidence that the jury

actually found both elements were proved beyond a reasonable doubt.

> "The test . . . is not whether laying aside the [error] there was other evidence sufficient to convict beyond a reasonable doubt . . . , but, more stringently, 'whether there is a reasonable possibility that the [error] complained of might have contributed to the conviction.'" In other words, even if "the other evidence amply supports the . . . verdicts, [error is not harmless when it] may well have affected the . . . decision."
>
> An "emphasis and perhaps overemphasis, upon the [concept] of 'overwhelming evidence'" has the effect of clouding the relevant question "'whether there is a reasonable possibility that the [error] complained of might have contributed to the conviction.'" As the Supreme Court has stated, "[t]he correct inquiry is whether, assuming that the damaging potential of the [error] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." Thus, "a harmless error analysis . . . [is not] simply a sufficiency of the evidence analysis."

Williams v. Commonwealth, 32 Va. App. 395, 399-400, 528 S.E.2d 166, 168-69 (2000)

(citations omitted).

Recently, in a civil case where the issue was whether conduct was "so willful or

wanton . . . [to] support an award of punitive damages," the Supreme Court ruled that the

evidence was insufficient to prove either. Doe v. Isaacs, 265 Va. 531, 535, 579 S.E.2d 174,

176-77 (2003). The Court summarized the lack of evidence as follows:

> Clearly, the defendant's actions, involving violation of traffic laws and rules of the road, demonstrated a disregard of prudence to the level that the safety of others was completely

neglected. But this conduct amounts to gross negligence, which shocks fair-minded people; it is less than willful recklessness. The required "actual or constructive consciousness that injury will result from the act done or omitted," is lacking in the proof.

At the most from the plaintiffs' standpoint, the defendant did not keep a proper lookout for vehicles nearly stopped ahead of him, he did not keep his vehicle under proper control, he probably was intoxicated to some extent, and he feloniously left the scene of the accident in violation of Code § 46.2-894. There is no evidence that defendant exceeded the speed limit or a reasonable speed under the circumstances. He was driving on his proper side of the street, apparently operating a properly functioning vehicle. In sum, the defendant's behavior was not the "egregious" conduct spoken of in our cases.

Id. at 538, 579 S.E.2d at 178 (citations omitted). Thus, although exemplary damages (see Code § 8.01-44.5) are permitted in a civil case upon a showing of "willful or wanton" conduct, Isaacs, 265 Va. at 536, 579 S.E.2d at 174, the evidence the Supreme Court reviewed above proved neither element, even though the plaintiff only had to prove either by a mere preponderance.

The evidence before the jury in this case, where the prosecution had the burden of proving "willful and wanton" disregard beyond a reasonable doubt, is equally deficient. It did not prove Bazemore exceeded any posted speed limits. Although the officer testified that at one point Bazemore accelerated to fifty miles per hour, the evidence does not establish the posted speed limit on this road. The evidence strongly suggests, however, that Bazemore was within the speed limit because the road was a four-lane "thoroughfare that runs . . . from Suffolk to [the State of North] Carolina." The officer also testified that after Bazemore left this road, Bazemore's speed decreased "to approximately 10 miles an hour when he turned into a residential area." No evidence suggests Bazemore was violating the posted speed limit as he left the residential area and entered the intersection. Indeed, the officer behind Bazemore testified his own speed was approximately fifteen to twenty miles per hour when Bazemore drove into the intersection. The severity of the collision in the intersection likely is explained by Bazemore's

vehicle hitting a minivan that was travelling on a four-lane divided highway with a greater speed. In the absence of proof Bazemore was driving at an excessive speed, it is difficult to conclude that a reasonable jury would have found the necessary mercilessness to justify a finding of wanton disregard.

The evidence also leaves uncertain whether the jury based its conviction on a finding of willful conduct. Significantly, the jury accepted Bazemore's testimony that he did not steal the vehicle and convicted him of larceny upon his testimony that he knew he was driving a vehicle Shorter had stolen. The jury also may have believed Bazemore's testimony that he did not stop because he was "scared" and that he also was afraid Shorter would have harmed him. However, even if the jury accepted Bazemore's testimony and found that he did not intentionally violate the traffic laws but acted out of fear, see id. at 535, 579 S.E.2d at 176 (reaffirming the long standing rule that "'the intentional violation of a traffic law, without more, will not support a finding of willful and wanton [conduct]'"), the jury still could have applied the defective instruction and convicted Bazemore.

Simply put, even though the majority opinion concludes that the evidence is perhaps adequate to support a finding of wanton and willful disregard, it is entirely possible that the jury convicted Bazemore solely on a finding of either willful or wanton disregard of the officer's signal. Indeed, it is highly probable that the jury did so because, without an instruction requiring the jury to find that both elements were proved beyond a reasonable doubt, we cannot assume the jury performed a task that was neither necessary nor required under the defective instruction.

When a defendant elects to be tried by a jury "in a criminal case[,] the law assigns [the factfinding function] solely to the jury." Sandstrom v. Montana, 442 U.S. 510, 523 (1979). Therefore, we cannot on appeal supplement the jury's finding to add an element the jury was not required to consider. Indeed, to do so, we would, in effect, commit the same error the trial judge

-26-

committed -- we would determine the evidence proved beyond a reasonable doubt the element of the offense the jury was required to find but was not instructed to find. We would make an independent determination of the credibility of witnesses and weight of the evidence, both of which "are matters solely for the fact finder." Hampton v. Commonwealth, 32 Va. App. 644, 648, 529 S.E.2d 843, 845 (2000). Instead of compounding the error, we can avoid negating the jury's fact finding function by giving effect to the well established principle that a harmless error analysis is entirely distinct from an analysis of the sufficiency of the evidence. See Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978) (holding that even if "the other evidence amply supports the . . . verdicts, [error is not harmless when] the [error] may well have affected the . . . decision"); Hooker v. Commonwealth, 14 Va. App. 454, 458, 418 S.E.2d 343, 345 (1992) (holding that "a harmless error analysis . . . [is not] simply a sufficiency of the evidence analysis").

The jury's verdict in this case plainly was the result of a finding premised upon Bazemore acting either wantonly or willfully, but not both.

> [T]he United States Constitution requires that the jury, in a criminal case, determine beyond a reasonable doubt that the government has proven each element necessary to constitute the crime charged. Thus, a judge in a criminal case may not direct a verdict, even a partial verdict, for the government even though the evidence is overwhelming or even undisputed on the point. When a judge gives an instruction preventing the jury from considering a material issue, that instruction is equivalent to an impermissible directed verdict on the issue.

United States v. Piche, 981 F.2d 706, 716 (4th Cir. 1992) (citations omitted). Certainly, if "a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict . . . , regardless of how overwhelmingly the evidence may point in that direction," United States v. Martin Linen Supply Co., 430 U.S. 564, 572-73 (1977), an appellate court cannot supplement on appeal the jury's fact finding function by applying a

sufficiency analysis to conclude that an element of the offense, not found by the jury, was proved beyond a reasonable doubt.

For these reasons, I would hold that the error was not harmless.

III.

Lastly, I would note that on several occasions, the Supreme Court has reversed convictions for non-existent offenses. In Bundy v. Commonwealth, 220 Va. 485, 259 S.E.2d 826 (1979), the Court ruled as follows:

> We believe that the weapons verdict in this case . . . plainly convicts the defendant of the use of a firearm while committing, not murder, but some undesignated other felony. Under the weapons statute as it read prior to 1976, such a verdict might have been proper.
>
> [A]s a result of the 1976 amendment to Code § 18.2-53.1, the use of a firearm "while committing a felony" no longer is sufficient to constitute a violation of the statute. Now, a violation occurs only when a firearm is used with respect to the specified felonies of murder, rape, robbery, burglary, and abduction.
>
> The offense in this case and the prosecution therefor took place after the effective date of the amendment to Code § 18.2-53.1. Yet, under instructions erroneously framed to permit such action, the jury was given free rein either to convict the defendant of the no-longer existing offense of using a firearm in the commission of a felony or to convict him of using a firearm while committing murder. The jury convicted the defendant of the non-existent offense. Clearly, therefore, the defendant's firearms conviction must be reversed.
>
> The erroneous instructions which led to the anomalous result reached below were granted, if not at the Commonwealth's request, in the absence of any objection.

Id. at 487-88, 259 S.E.2d at 828. See also Jimenez, 241 Va. at 251, 402 S.E.2d at 681 (holding that Jimenez's failure to object at trial did not waive "his right to raise this matter on appeal" because the judge's "instruction omitted some essential elements of the offense" and permitted the jury to convict Jimenez "of a non-offense"); Ball v. Commonwealth, 221 Va. 754, 758-59,

273 S.E.2d 790, 793 (1981) (reversing a conviction for capital murder because the evidence proved a homicide during an attempted robbery, which was not then one of the statutorily defined predicate offenses of capital murder).

In my view, a circuit court lacks the power to convict an accused criminal defendant of a "non-existent offense." A conviction of a "non-existent offense" implicates the circuit court's subject matter jurisdiction and, thus, is cognizable on a direct appeal from such a conviction. Indeed, the Supreme Court has held "that '[s]ubject matter jurisdiction is granted by constitution or statute,' that '[i]t cannot be waived,' that 'any judgment rendered without it is void *ab initio*,' and that 'lack of subject matter jurisdiction "may be raised at any time, in any manner, before any court, or by the court itself."'" Nelson v. Warden, 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001) (citation omitted).

Because the jury convicted Bazemore of a non-existent criminal offense, I would hold that the circuit court exceeded its jurisdictional power when it convicted Bazemore of an offense that does not exist under the criminal law.

## IV.

In summary, I would affirm the grand larceny conviction and remand to the trial judge to correct that conviction order by inserting a reference to Code § 18.2-108. I would reverse the convictions for felony eluding a law enforcement officer and felony homicide, and I would remand for a new trial where the jury may be properly instructed.

COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Elder and Senior Judge Coleman
Argued at Chesapeake, Virginia


NICKO BAZEMORE

MEMORANDUM OPINION[*] BY

v.      Record No. 0103-02-1      JUDGE JAMES W. BENTON, JR.
                                    MAY 13, 2003

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Westbrook J. Parker, Judge

Andrew G. Wiggin for appellant.

Eugene Murphy, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Nicko Bazemore appeals from convictions of grand larceny, feloniously eluding the police, and second degree murder. He contends (1) the evidence was insufficient to support the convictions, (2) the trial judge erred by refusing to give the jury an instruction defining the word "wanton," and (3) the trial judge failed to properly instruct the jury on the elements of the offense of feloniously eluding the police and, thus, permitted the jury improperly to convict him of feloniously eluding the police and felony homicide. For the reasons that follow, we hold that the judge erred by instructing the jury concerning the offense of feloniously eluding the police. Because the error was not harmless, we reverse the convictions for feloniously eluding the police and second degree murder. We affirm, however, the conviction for grand larceny.

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

I.

The grand jury's indictment charged that Nicko Bazemore "unlawfully and feloniously while in the prosecution of a felonious act, accidentally, contrary to the intention of the parties, did kill and murder . . . in violation of [Code] §§ 18.2-33, 18.2-32, and 18.2-26." The grand jury also indicted Bazemore for feloniously eluding a police officer in violation of Code "§§ 42.2-817(B); 18.2-10," and for grand larceny "in violation of [Code] § 18.2-95."

At trial, the evidence proved that on the morning of August 4, 2000, Officer M.C. Marshall noticed a broken rear window on a green minivan in the City of Suffolk and received information that the license plates on the vehicle were registered to another vehicle. When the officer activated the siren and lights on his police car, the vehicle continued moving. During the pursuit, which covered a little more than a mile in relatively heavy traffic, the driver failed to heed two stop signs, accelerated to 50 miles per hour, but later decreased his speed "to . . . 10 miles an hour." The vehicle made a series of turns, failed to heed another stop sign, and struck a minivan after entering the intersection. The officer could not estimate the vehicle's speed; however, he testified that his own speed was "approximately 15 to 20 miles an hour" when the vehicle went into the intersection. A witness described the vehicle as "shooting across the intersection."

The minivan that the vehicle hit was travelling on "a thoroughfare that . . . [is] a four lane road." After the vehicle hit the minivan, another van hit the minivan. A passenger in the minivan sustained a fractured cervical spine and died. After the collision, the vehicle the officer was pursuing spun off the road and hit a house.

When the officer approached the vehicle, Greg Shorter exited through the front passenger door. The officer testified that he saw Nicko Bazemore leaving the driver's seat and attempting to exit through the front passenger door. The officer drew his weapon and arrested Shorter and

-31-

Bazemore. Denise Byron, who was a passenger in the vehicle, had been thrown from the back of the vehicle when it hit the house.

Later, when the rescue squad arrived, Bazemore complained of pain and told the officer he was driving the vehicle when it crashed. Bazemore was wearing one shoe. Inside the vehicle, the officers found Bazemore's other shoe under the brake pedal. They also found a 9-mm handgun, a screwdriver, and a Florida license plate. The vehicle's ignition had been damaged, and a rag was covering the steering column. The evidence proved that the vehicle had been stolen two days earlier in the City of Norfolk and that broken glass was on the pavement after the vehicle had been stolen.

Several hours after the police arrested Bazemore, he waived his Miranda rights. Bazemore initially told the police that a friend, whom he only knew as Malik, and Shorter offered him a ride at 9:00 p.m. on the night before the accident. Bazemore said that he noticed the screwdriver on the floor and the broken window and that Malik told him he had gotten the van from Norfolk. Bazemore also said he learned within two hours that the vehicle had been stolen. Later, Byron joined them and sat on the rear seat of the vehicle.

Bazemore told the police he began driving the vehicle at 3:00 a.m. He also said that after the officer attempted to stop the vehicle, he believed the vehicle might be stolen. When asked "Why didn't you stop the vehicle?," he responded "I was scared." As the interview progressed, Bazemore said that Malik did not exist and that when he entered the vehicle Shorter was the driver and sole occupant. Bazemore admitted he was driving the vehicle when the accident occurred and could not recall his speed because "it happened so quick."

After the trial judge denied Bazemore's motions to strike the evidence, Bazemore testified that Shorter, who is also called "Malik," was driving the vehicle when he entered it. They spent the hours before the incident driving to various places. Bazemore testified he was driving when Byron joined them at 5:30 or 6:00 in the morning, but he denied seeing the broken steering column.

Although he knew Shorter did not own the vehicle and did not have money to buy a vehicle, he did not ask Shorter where he obtained it or who owned it.

Bazemore also testified that, after the police signaled him to stop and began to pursue him, he and Shorter switched places in the moving vehicle. He said that Shorter was driving when the vehicle entered the intersection and that he did not remember telling the police he was driving when the collision occurred. Despite his previous statement to the police that he had not seen a gun in the van, Bazemore testified that Shorter displayed the gun in the vehicle, said he was not going back to prison, and ignored Bazemore's and Byron's requests to stop. Bazemore also testified that after the accident, Shorter crawled across him from the driver seat to get out of the van. He testified that he lied to the police in the interview to protect Shorter because he "was afraid of everything that was going on around him" and afraid of Shorter.

The jury convicted Bazemore of "grand larceny by receiving stolen property," of the "felony . . . of disregarding the signal of a law enforcement officer," and of "felony homicide." The final conviction order denotes the convictions as "Grand Larceny ([Code] § 18.2-95)," "Eluding Police-Endangerment (§ 46.2-81[7](B) (Felony)," and "Second Degree Murder (§ 18.2-32) (Felony)."

## II.

Bazemore contends the evidence was insufficient to prove grand larceny by receiving stolen property. Specifically, he argues the evidence was insufficient to prove he knew the vehicle was stolen, intended to permanently deprive the owner of the vehicle, and had dishonest intent.

## A.

Bazemore contends on appeal the evidence was insufficient to convict him of violating Code § 18.2-108. The final conviction order recites, however, that the conviction was for grand larceny in violation of Code § 18.2-95, which was the charge specified in the indictment. Although

neither Bazemore nor the Commonwealth addressed this discrepancy, we address it for completeness of our decision.

The record reflects that the trial judge's instructions permitted the jury to convict Bazemore of "grand larceny," which was the offense charged in the indictment, or to convict him of other lesser offenses, including "grand larceny by receiving stolen property." The verdict form establishes that the jury convicted Bazemore of "grand larceny by receiving stolen property," which is prohibited by Code § 18.2-108. Following the guilt phase of the trial, the jury fixed Bazemore's punishment at one year in prison for "grand larceny by receiving stolen property." Consistent with the jury's findings, the trial judge entered an order reflecting that the jury convicted Bazemore and fixed his sentence for "grand larceny by receiving stolen property." The final conviction order, however, contains no reference to Code § 18.2-108 and recites only that Bazemore was convicted of "grand larceny ([Code] § 18.2-95)."

The Supreme Court has held that "[r]eceiving stolen goods, knowing the same to be stolen, may be charged as larceny." Clark v. Commonwealth, 135 Va. 490, 498, 115 S.E. 704, 706 (1923). See also Cabbler v. Commonwealth, 212 Va. 520, 524, 184 S.E.2d 781, 783 (1971) (holding that "[l]arceny by receiving stolen goods is a lesser offense which is included in the major one of larceny"). In view of these decisions, the jury's verdict forms, and the trial judge's order entered upon the jury's verdict, we hold that the trial judge's failure to include a reference to Code § 18.2-108 on the final conviction order was a mere clerical error.

B.

Code § 18.2-108 provides that "[i]f any person buy or receive from another person, or aid in concealing, any stolen goods or other thing, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof, and may be proceeded against, although the principal offender be not convicted." We have parsed the elements of the offense as follows:

> "To convict a defendant under Code § 18.2-108, the Commonwealth must prove that property 'was (1) previously stolen by another, and (2) received by defendant, (3) with knowledge of the theft, and (4) a dishonest intent.' Guilty knowledge 'is sufficiently shown if the circumstances proven are such as must have made or caused the recipient of stolen goods to believe they were stolen.'"

Snow v. Commonwealth, 33 Va. App. 766, 775, 537 S.E.2d 6, 11 (2000) (citations omitted).

"When an appellant challenges the sufficiency of the evidence to sustain his conviction, we review the evidence in the light most favorable to the Commonwealth and grant to it 'all reasonable inferences fairly deducible therefrom.'" Kelley v. Commonwealth, 17 Va. App. 540, 548, 439 S.E.2d 616, 621 (1994) (citation omitted). So viewed, the evidence proved Bazemore confessed to the police that shortly after he entered the vehicle, he learned it had been stolen. He also saw the vehicle's broken window and the screwdriver on the floor. Thus, by Bazemore's own admission, he knew he was driving a stolen vehicle before he failed to heed the officer's signal. The evidence also proved Bazemore admitted to an inmate in jail that he knew the vehicle was stolen. Furthermore, apart from his own confession and the testimony of an inmate, the evidence proved Bazemore was driving the vehicle in daylight and had the opportunity to see the "popped" ignition, the broken steering column, and a rag covering the steering column. Other evidence proved Bazemore knew Shorter did not own the vehicle and Bazemore continued to drive after the officer signaled him to stop.

The jury was not required to accept Bazemore's trial testimony. Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). It was free to believe or disbelieve, in part or in whole, the testimony of any witness. Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991). Although Bazemore's testimony differed from his confession, "the jury was 'not obliged to accept' what it obviously found was an unreasonable explanation," Roberts v. Commonwealth, 230 Va. 264, 272, 337 S.E.2d 255, 260 (1985), and

was free to believe his confessed participation. We hold the evidence was sufficient for the jury to find beyond a reasonable doubt that Bazemore knew the vehicle was stolen when he drove it.

C.

Bazemore also contends the evidence was insufficient to prove he intended to permanently deprive the owner of the vehicle. Bazemore argues that the evidence establishes he only intended to drive for a short while and then return the vehicle to Shorter's control.

The intent to permanently deprive is not an element of receiving stolen property under Code § 18.2-108. Neither the statute, nor case law requires a showing of an intent to permanently deprive. Moreover, Bazemore's reliance on Moehring v. Commonwealth, 223 Va. 564, 568 S.E.2d 891 (1982), to support his defense that he had no intent to permanently deprive is misplaced. The Supreme Court noted the following in reversing Moehring's conviction:

> There is no evidence in the record which demonstrates that Moehring exercised any degree of dominion or control over the stolen truck, or from which the court could have inferred that defendant possessed the truck jointly with Faison. . . . The most that can be said with reasonable certainty is that this defendant-hitchhiker accepted a ride from the first person who stopped and that he knew that person was driving a stolen vehicle.

Id. at 568, 568 S.E.2d at 893. Pertinent to the evidence in this case, the Court restated the well-settled rule that "[b]ecause larceny is a continuing offense, anyone who knows that personal property is stolen and assists in its transportation or disposition is guilty of larceny." Id. The evidence proved beyond a reasonable doubt Bazemore knew the vehicle was stolen and drove it with that knowledge.

D.

Although Bazemore now contends the evidence was insufficient to prove he had dishonest intent, we have consistently held that issues that were not properly preserved at trial cannot be raised on appeal. Andrews v. Commonwealth, 37 Va. App. 479, 493, 559 S.E.2d 401,

408 (2002). Bazemore never raised the argument of dishonest intent in the trial court. Therefore, we will not review the issue for the first time on appeal. Rule 5A:18.

In summary, viewed in the light most favorable to the Commonwealth, the evidence proved beyond a reasonable doubt Bazemore knew the vehicle was stolen. He confessed his knowledge. Furthermore, he could plainly see the damaged steering column, and he drove the vehicle without a key in the ignition. Thus, we hold that the evidence was sufficient to prove beyond a reasonable doubt grand larceny by receiving stolen property.

III.

Bazemore contends that the trial judge failed to instruct the jury on the definition of wanton. He argues that because of this error his convictions for felony eluding the police and felony murder should be reversed. We agree with the Commonwealth that Bazemore is barred from raising this issue on appeal.

To prove a violation of Code § 46.2-817, the Commonwealth had to prove Bazemore drove the "motor vehicle in a willful and wanton disregard" of the officer's signal. Bazemore did not request the judge to instruct the jury concerning the definition of "wanton." Therefore, we will not review the issue for the first time on appeal. Rule 5A:18.

Furthermore, this record provides no basis to consider this claim under the "ends of justice" exception in Rule 5A:18. As the Supreme Court has ruled, the trial judge is not required to define for a jury a statutory term that is not ambiguous and has an ordinary meaning. See Roach v. Commonwealth, 251 Va. 324, 346, 468 S.E.2d 98, 111 (1996); Black v. Commonwealth, 20 Va. App. 186, 192, 455 S.E.2d 755, 758 (1995). When a statutory term is commonly used and has an accepted meaning, the mere absence of a definitional instruction is not reversible error. Clark v. Commonwealth, 220 Va. 201, 211, 257 S.E.2d 784, 790 (1979). In the absence of a request by Bazemore to give the jury an instruction defining wanton, the trial

judge did not abuse his discretion in not giving a definition <u>sua</u> <u>sponte</u>.  <u>See</u> <u>Coppola v.</u>

<u>Commonwealth</u>, 220 Va. 243, 254-55, 257 S.E.2d 797, 805 (1979).

IV.

Bazemore contends the evidence was insufficient to prove he wantonly disregarded the

officer's signal to stop.  He also contends the trial judge incorrectly instructed the jury

concerning the elements of Code § 46.2-817 by placing the elements of "willfull" and "wanton"

in the disjunctive rather than in the conjunctive.  Consequently, he argues his felony eluding

conviction should be reversed and, because his felony murder conviction was contingent upon

the felony eluding conviction, it must also be reversed.  The Commonwealth contends Bazemore

did not preserve for appeal his objection to the sufficiency issue and he failed to object to the

mistake in the instruction.  Bazemore responds that the "ends of justice" exception applies.

A.

Arguing the motions to strike, Bazemore's trial attorney conceded Bazemore was

operating the vehicle.  He argued, however, that because Bazemore did not know the vehicle was

stolen, the evidence failed to prove grand larceny.  Thus, he argued that grand larceny, which he

asserted should have been the predicate offense for felony murder, was not proved.  He then

argued as follows:

> I would submit . . . that the eluding is a separate and distinct
> crime, that the essence of which is [failure] to heed the police
> signal to stop under circumstances that create danger to the
> motoring or pedestrian traffic. . . .  I would submit, Judge, that that
> is not a sufficient predicate for felony murder to apply.

At the conclusion of all the evidence, Bazemore's attorney moved to strike the evidence

concerning the eluding charge, asserting the evidence failed to prove Bazemore was driving the

vehicle.  He argued that the credible evidence proved Shorter had switched places with

Bazemore and was driving the vehicle when the collision occurred. Summarizing, he argued as follows:

> [T]hey have to prove for the reckless endangerment element that the defendant was driving at the time to create a danger to the motoring or pedestrian public. They can't do that. We would have to guess, the Court would have to guess at [the] point that endangerment occurred. So I would submit, Your Honor, that the charge of felony eluding, likewise, has to fall because there is insufficient evidence to support the conclusion that at the relevant time that the defendant was actually driving a car or this van to endanger the motoring public.

As to the felony-murder charge, he argued as follows:

> We would also . . . move to strike the Commonwealth's evidence as to second degree murder. It's clear that this was an accident, that whoever was driving that it was not the intended purpose to do that, and . . . the evidence before the Court is that the defendant was not the operator of the vehicle at the time of the collision.

These arguments, which the trial judge rejected, also formed the gist of Bazemore's trial attorney's argument to the jury. Urging the jury to analyze "the elements of the offenses," he discussed in detail the elements of the larceny offense. As to "the eluding," he posed the question, "where is the evidence that Nicko Bazemore was operating . . . the [vehicle] at any time that created a danger to the public?" Thus, he argued:

> So, if, indeed, you conclude that [Bazemore] was not the driver of the [vehicle] at the time of the collision, he could not be convicted of felony murder. If you believe that he was not driving at any time when the vehicle presented a danger to the motoring public, he could not be convicted of eluding a felony.

At all stages of the trial, Bazemore contended he was not driving when the vehicle entered the intersection in disregard of the stop sign and collided with the van. At no point, did he object that the evidence was insufficient to prove the element of "wanton." The failure to raise these issues at trial bars our consideration of them on appeal. Rule 5A:18. See Floyd v. Commonwealth, 219 Va. 575, 583-85, 249 S.E.2d 171, 176 (1978) (holding that appellate review

of the issue of insufficiency to prove a specific element is barred when that issue was not raised at trial). In view of the arguments Bazemore actually advanced at trial and the evidence produced, we conclude that no basis exists to invoke the "ends of justice" exception to Rule 5A:18.

B.

Bazemore further contends that the trial judge erred in instructing the jury on the elements of the offense of eluding. Although the Commonwealth correctly notes that Bazemore did not object to the flawed instruction, we address this issue because Bazemore's claim falls within a recognized exception to Rule 5A:18.

Code § 46.2-817 provides in pertinent part as follows:

> B. Any person who, having received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop, drives such motor vehicle in a willful <u>and</u> wanton disregard of such signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person is guilty of a Class 6 felony.

(Emphasis added).

The trial judge instructed the jury that the Commonwealth was required to "prove beyond a reasonable doubt . . . that [Bazemore] willfully <u>or</u> wantonly disregarded such signal so as to endanger any person." (Emphasis added). This was an incorrect statement of law. The General Assembly amended Code § 46.2-817 in 1999, effective July 1, 2000, and substituted "and" for "or" preceding the words "wanton disregard." <u>See</u> 1999 Va. Acts, ch. 720. Thus, the statute in effect on the date of this incident expressly required a showing of "willful <u>and</u> wanton disregard of [the officer's] signal." Code § 46.2-817(B) (emphasis added).

The Supreme Court has held that the "ends of justice" exception applies to permit review when there has been a failure to object to an instruction that "omitted some essential element of the offense." <u>Jimenez v. Commonwealth</u>, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1991). We

-40-

have also held that Rule 5A:18 will not bar our review of an instruction that "allows a jury to convict a defendant without proof of an essential and necessary element of the charged offense." Campbell v. Commonwealth, 14 Va. App. 988, 994, 421 S.E.2d 652, 656 (1992). In this case, the jury instruction concerning the felony of eluding a police officer was so defective that it would have allowed the jury to convict Bazemore if it found that his conduct only was willful.

"[W]hen a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." Jimenez, 241 Va. at 250, 402 S.E.2d at 681. Obviously, the proper description of the elements of the offense is vital to a defendant. Accordingly, we hold that the trial judge erred in giving the instruction.

C.

The Commonwealth contends that even if the "ends of justice" exception applies, the convictions nevertheless should not be reversed because, in this case, the error was harmless. We disagree.

The Supreme Court has held that the test for nonconstitutional harmless error is as follows:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand. . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand.

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001). This decision "adopt[s] the Kotteakos [v. United States, 328 U.S. 750 (1946),] harmless-error test" for measuring error under Code § 8.01-678. Clay, 262 Va. at 260, 546 S.E.2d at 732.

Applying that test, the United States Supreme Court recently held that "the principle of Kotteakos [means] that when an error's natural effect is to prejudice substantial rights and the

-41-

court is in grave doubt about the harmlessness of that error, the error must be treated as if it had a 'substantial and injurious effect' on the verdict." O'Neal v. McAninch, 513 U.S. 432, 444 (1995) (quoting Kotteakos, 328 U.S. at 764-65, 776). Moreover, when a trial error has been shown on direct appeal from a conviction, the government bears the burden of proving harmlessness under this standard. See O'Neal, 513 U.S. at 438. Indeed, the Supreme Court of Virginia has held that "error will be presumed to be prejudicial unless it plainly appears that it could not have affected the result." Caldwell v. Commonwealth, 221 Va. 291, 296, 269 S.E.2d 811, 814 (1980).

To establish a violation of Code § 46.2-817(B), the Commonwealth must prove, according to the statute's express language, that Bazemore operated the vehicle in a "willful and wanton disregard of [the officer's] signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person." (Emphasis added). Because the trial judge incorrectly instructed the jury concerning the statutory elements by placing the elements of "willful" and "wanton" in the disjunctive, we cannot have any degree of confidence that the jury actually found the element of "wanton" disregard, which it must find beyond a reasonable doubt to sustain the conviction.

In the civil context, the Supreme Court long ago defined willful and wanton conduct as follows:

> [W]illfulness and wantonness convey the idea of purpose or design, actual or constructive. . . . [T]hey are used to signify a higher degree of neglect than gross negligence. "In order that one may be held guilty of willful or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result."

Thomas v. Snow, 162 Va. 654, 660, 174 S.E. 837, 839 (1934) (citation omitted). See also Infant C. v. Boy Scouts of America Inc., 239 Va. 572, 581, 391 S.E.2d 322, 327 (1990). This definition

-42-

requires a showing of recklessness plus additional culpability and is consistent with other general authority.

> "Wanton differs from reckless both as to the actual state of mind and as to the degree of culpability. One who is acting recklessly is fully aware of the unreasonable risk he is creating, but may be trying and hoping to avoid any harm. One acting wantonly may be creating no greater risk of harm, but he is not trying to avoid it and is indifferent to whether harm results or not. Wanton conduct has properly been characterized as 'vicious' and rates extreme in the degree of culpability. The two are not mutually exclusive. Wanton conduct is reckless plus, so to speak."

Black's Law Dictionary 1576 (7th ed. 1999) (quoting Rollin M. Perkins & Ronald N. Boyce, Criminal Law 879-80 (3 ed. 1982)).

Likewise, in the criminal context, the Supreme Court has held that

> "[g]ross negligence" is culpable or criminal when accompanied by acts of commission or omission of a wanton or willful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts.

Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992) (citation omitted). It follows, therefore, that "'[w]anton negligence' is of even a higher degree than 'gross negligence' . . . [and is] define[d] . . . as '[m]arked by or manifesting arrogant recklessness of justice, of the rights or feelings of others, . . . merciless; inhumane.'" Forbes v. Commonwealth, 27 Va. App. 304, 310, 498 S.E.2d 457, 459 (1998) (citations omitted).

We have held that a person violated Code § 46.2-817(B) when he ignored a signal to stop, operated a vehicle at a high speed in violation of posted limits, passed three cars, crossed a double solid line, "disregarded a red traffic signal at an intersection with a four-lane highway," and then crashed into a tree after losing control of the vehicle. Tucker v. Commonwealth, 38 Va. App. 343, 347, 564 S.E.2d 144, 146-47 (2002). On the other hand, the Supreme Court has noted

"that the intentional violation of a traffic law, without more, will not support a finding of willful and wanton negligence." Alfonso v. Robinson, 257 Va. 540, 545, 514 S.E.2d 615, 618 (1999) (citing Harris v. Harmon, 253 Va. 336, 341, 486 S.E.2d 99, 102 (1997), and Baker v. Marcus, 201 Va. 905, 910, 114 S.E.2d 617, 621-22 (1960)). The evidence in this case is equivocal whether the jury found Bazemore's conduct to be other than willful. We hold, therefore, that we cannot say "the judgment was not substantially swayed by the error." Clay, 262 Va. at 260, 546 S.E.2d at 732.

The evidence proved Bazemore disregarded the officer's signal to stop. He continued to drive for a mile in relatively heavy traffic and failed to heed three stop signs in the process. The evidence, however, does not prove Bazemore exceeded any posted speed limits. The officer testified that at one point, Bazemore accelerated to fifty miles per hour, but the evidence does not establish the posted speed limit at that point. He also testified that Bazemore's speed then decreased "to approximately 10 miles an hour."

The evidence does not suggest Bazemore was violating the posted speed limit when he entered the intersection. Although a witness described the vehicle as "shooting across the intersection," this testimony does not establish Bazemore was exceeding the posted limit when he failed to heed the stop sign. Indeed, the officer pursuing Bazemore testified his own speed was approximately fifteen to twenty miles per hour when Bazemore drove into the intersection. The severity of the collision likely is explained by Bazemore's vehicle hitting a minivan that was travelling fast on a four lane divided highway. In the absence of proof Bazemore was driving at an excessive speed, it is difficult to reasonably conclude that a reasonable jury would have found the necessary mercilessness to justify a finding of wantonness.

Significantly, the jury accepted Bazemore's testimony that he did not steal the vehicle and convicted him of larceny upon his testimony that he knew he was driving a vehicle Shorter had

-44-

stolen. Therefore, the jury may also have believed Bazemore's testimony that he did not stop because he was "scared" and also afraid that Shorter would have harmed him. If so, this evidence is clearly sufficient to support a finding of willfulness and to support a conviction based on the limited element in the defective instruction. Thus, even though the evidence is perhaps adequate to support a finding of wanton disregard, it is entirely possible that the jury convicted Bazemore solely on a finding of willful disregard of the officer's signal.

The principle is well established that a harmless error analysis is entirely distinct from an analysis of the sufficiency of the evidence. "The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." Kotteakos, 328 U.S. at 765. Consistent with these principles, the Supreme Court of Virginia has held that even if "the other evidence amply supports the . . . verdicts, [error is not harmless when] the disputed [evidence] may well have affected the . . . decision." Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978). See also Hooker v. Commonwealth, 14 Va. App. 454, 458, 418 S.E.2d 343, 345 (1992) (holding that "a harmless error analysis . . . [is not] simply a sufficiency of the evidence analysis").

We cannot say, "'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole' that it plainly appears that [Bazemore] has had a fair trial and the verdict and judgment were not substantially affected by . . . [the error]." Clay, 262 Va. at 261, 546 S.E.2d at 732. Accordingly, we hold the error was not harmless.

V.

For these reasons, we affirm the grand larceny conviction and remand to the trial judge to correct the final conviction order by inserting a reference to Code § 18.2-108. We reverse the

-45-

convictions for felony eluding the police and felony homicide, and we remand for a new trial where the jury may be properly instructed.

<u>Affirmed, in part, and remanded</u>
<u>and reversed, in part, and remanded</u>.

Coleman, J., concurring, in part, and dissenting, in part.

I concur with the majority's holdings in (1) Part II affirming Bazemore's grand larceny conviction, (2) Part III holding that Rule 5A:18 procedurally barred Bazemore's claim that the trial judge erred by failing to instruct the jury on the definition of "wanton" as to the eluding the police and felony murder charges, and (3) Part IV A holding that Bazemore's insufficiency argument to the eluding and felony murder convictions is procedurally barred by Rule 5A:18.

I disagree with the majority's holdings in Part IV B and C reversing the convictions for felony eluding the police and felony homicide. The majority concludes that the trial judge erred by failing to sua sponte modify the proffered jury instruction on eluding a police officer to read that Bazemore "willfully and wantonly" disregarded the police officer's signal to stop, rather than "willfully or wantonly" disregarded such signal. In my view, Rule 5A:18 bars consideration of this issue and the trial judge was not required to consider the issue when neither counsel objected to the proffered instruction. As the majority notes, the instruction was appropriate prior to the July 1, 2000 amendment to Code § 46.2-817 and, in my opinion, whether the instruction reads in the disjunctive or conjunctive is not so significant to require us to address that issue under the ends of justice exception.

Moreover, on these facts the error was harmless, in my opinion. The majority, in concluding that Bazemore's driving could not be considered "willful and wanton" as a matter of law focused upon the fact that Bazemore may not have driven in excess of fifty miles per hour and that the evidence did not prove the posted speed limit. Regardless of the speed at which Bazemore traveled, the evidence proved he disregarded the police officer's signal to stop, he continued to elude for a mile in relatively heavy traffic, he failed to heed three stop signs, and he drove through an intersection onto a busy four lane divided highway. No reasonable juror could find that Bazemore's driving into the busy intersection without yielding was not both willful and

–47–

wanton.  On these uncontradicted facts, Bazemore's driving into the intersection was an act of his volition and was in disregard of the life and safety and well-being of other motorists.  I would hold that any error by the trial judge in failing to modify the jury instruction on eluding was harmless on these facts.